THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK H. WARDER, Appellant.

First Department, December 31, 1930.

*Max D. Steuer* of counsel [*James A. Hughes* and *Henry R. Bright* with him on the brief; *James I. Cuff*, attorney], for the appellant.

*Robert C. Taylor* of counsel [*Thomas C. T. Crain, District Attorney*], for the respondent.

FINCH, J.   After a trial at an extraordinary term of the Supreme Court, the defendant has been convicted by a jury of accepting a bribe of $10,000 while occupying the office of Superintendent of Banks of the State of New York, in consideration whereof the defendant neglected his official duty of examining the City Trust Company.

A consideration of this record leads inevitably to the conclusion

that the evidence preponderates heavily in favor of the finding of guilt of this defendant. Consequently, in order to set aside the verdict, he is compelled to rely upon alleged errors which occurred during the course of a long trial, commencing October 21 and ending November 5, 1929. These follow:

The defendant, appellant, first urges that the court erred in ruling as a matter of law that the People's witness Genaro Dell'Osso was not an accomplice in the commission of the crime. This was not error. The objection was presented to the court in this manner: At the close of the People's case the attorney for defendant moved to dismiss upon the ground that there had been no corroboration of the witness Dell'Osso. The learned trial judge then ruled that Dell'Osso was not an accomplice as matter of law. At the conclusion of the whole case the defendant took its position on this question by requesting a charge that Dell'Osso was " an accomplice as a matter of law." The trial court refused this request, thereby declining to charge that Dell'Osso was an accomplice as matter of law. It follows that the exception of the defendant, appellant, is to the refusal of the trial court to hold that Dell'Osso was an accomplice as matter of law, which ruling was clearly correct, since upon all the evidence it could not be held by the trial court that Dell'Osso was an accomplice as matter of law. No request was made that the jury should pass upon the question whether Dell'Osso was an accomplice as a matter of fact. The only question, therefore, properly before the trial court was whether Dell'Osso was an accomplice as matter of law. A consideration of the testimony shows not only that Dell'Osso was not an accomplice as matter of law, but that he was not an accomplice as a matter of fact, although, as noted, this latter point is not raised for our consideration. Nevertheless we pass to a consideration if, upon this record, there was sufficient evidence to carry to the jury whether Dell'Osso was an accomplice as a matter of fact, and reach the conclusion that there was not.

Under the authorities, to constitute an accomplice one must be so connected with the crime that at common law he might himself have been convicted either as a principal or as an accessory before the fact. " He must be shown to have counseled, induced or encouraged the crime." (Judge O'BRIEN, writing for the court in *People* v. *Clougher*, 246 N. Y. 106, at p. 111.) The question, therefore, presented is whether there is evidence in this record to sustain the conviction if Dell'Osso had been convicted for bribing the defendant. The evidence shows what sort of man Dell'Osso was, his relations with Ferrari and to the banks of Ferrari. Dell'Osso had never worked for any of the banks belonging to

Ferrari, nor for the City Trust Company. He had never been anything more than a small depositor in the banks of Ferrari. He was a faithful body servant of Ferrari, a messenger for him. At the times in question he was superintendent of a building owned by Ferrari, where he had charge of the elevatormen, the payroll and occasionally ran the elevator. Dell'Osso had visited the Harlem branch of the bank many times and a few times the Atlantic Avenue branch. He had an account in the Harlem branch, the average balance of which was about $500. He also had a very insignificant balance in his checking account at the City Trust Company and twice or more he had closed this account. Upon the evidence in this record no conviction of Dell'Osso for counselling, inducing or encouraging the crime of bribing this defendant as Superintendent of Banks in return for an agreement not to examine the City Trust Company could be upheld, and hence he was not an accomplice.

The appellant next urges that it was prejudicial error to permit the district attorney on cross-examination of the defendant to ask questions in relation to the so-called "little red book." The purpose of this cross-examination was to make the defendant admit that one of his deputies had come into his office shortly after the failure of the City Trust Company and had given to him a little memorandum book in which was the entry:

"Cashed check of Atl. for 30,000 F. M. F. V. P. who brought the cash by cab in bills of 1 M & 500 to redraw 425 Riverside Drive Apt. 69. M. F. went to Hightsman party Dir of Fed. & Atl. Bank.

"Eddy went to Bank Dept. to ask for merger approved & inc. in capital."

The defendant testified that he did not recall and was reasonably sure that this did not happen. Whatever else may be said, it is clear that upon a trial covering a period of over two weeks, during which it is shown that the defendant received in cash $13,000 in April or May, 1928; $16,000 in June, 1928; $6,000 in August, 1928, on the street; $8,000 in December, 1928, and $20,000 in January, 1929, also other moneys upon other occasions, and closed envelopes about a dozen times in 1927, to say nothing of gifts of furniture and rugs for an apartment, piano, automobile, and trips to Europe for the defendant's wife and daughter, such a question as here objected to, put to the defendant and denied, becomes inconsequential and in any event must be disregarded as not affecting the result of the trial. (Code Crim. Proc. § 542.)

Defendant, appellant, next urges that the court erred in permitting improper cross-examination of the defendant and his

daughter upon collateral matters concerning gifts by Ferrari to the latter and to her mother of furniture, rugs, automobile and trips to Europe. There was no error here. Certainly as to the defendant, the court was justified in allowing a wide cross-examination, particularly upon relevant matters and as bearing upon his credibility and general moral character. Nor was this latitude upon cross-examination exceeded in the case of the daughter. The stories told both by defendant and his daughter upon direct examination concerned relevant matters and were such as to require careful searching upon cross-examination.

Defendant, appellant, next urges that it was reversible error to admit in evidence, over objection and exception, the testimony of one J. Vincent Labate as to the delivery of envelopes and money to Mrs. Warder, and likewise to deny defendant's motion to withdraw a juror when the court later ruled that the evidence had been improperly admitted and should be stricken out. Much may be said upon this record to show that this evidence properly could have been left in the record. There was sufficient from which the jury might have inferred that this money was paid to Mrs. Warder, who was then living with her husband, for the defendant, in consideration for the acts of defendant in failing properly to supervise the banks of Ferrari. The situation is not different from that where the People would be permitted to show that, in return for failing to supervise banks properly, money was regularly left on a table in the apartment of a person situated as was this defendant. Any bribe money which was given to Mrs. Warder was for all practical purposes given to the defendant himself. There was no object in bribing Mrs. Warder. The latter held no official position and could give nothing in return. The only possible inference is that if any money came to her, it was merely that she might transmit it to the defendant. But even assuming that the testimony was improper, the record shows that the learned trial court struck the evidence from the record and directed the jury to disregard the same. Also he went further and was even more meticulously careful by asking the jurors whether they could dismiss that testimony from their minds and received from each juror his assent thereto. Furthermore, the learned court in his charge referred to this testimony and again admonished the jury that the same was to be entirely disregarded and no weight whatever given thereto. Where testimony is thus struck out, it will be presumed that the jurors obeyed the instructions and disregarded such evidence. (*People* v. *Wilson*, 141 N. Y. 185, at p. 191.)

The defendant, appellant, next urges that the court committed reversible error in admitting over the objection and exception of

defendant the testimony of the witness Dell'Osso as to the payments of money to the defendant on occasions other than that mentioned in the indictment. This constituted no error. The learned trial court was correct in holding that this evidence was admissible as showing the motive and intent and general plan and purpose of the payment charged in the indictment, and thus shown to be a part of a preconceived scheme or plan. (*People* v. *Duffy*, 212 N. Y. 57.)

The defendant, appellant, next urges that the court committed reversible error in its charge to the jury wherein it stated that there was no testimony by any one that the examinations of the Harlem Bank of Commerce and the Atlantic State Bank were deferred because of the merger of those banks. There was no error here. The charge was proper. Counsel urges that the testimony compelled the court to hold that the examination of the Ferrari banks was deferred because of the pending merger. The contrary conclusion appears from the evidence. It is true that Egbert, the chief examiner, testified that where banks merged the Department usually gave them possibly two months to straighten out and adjust their affairs. Counsel for defendant sought to show by this witness Egbert that there had been cases where the banks had been given two and one-half months. The defendant himself testified that the practice was to wait two or three months until the merged institutions were enabled to take up their loans and notes and straighten out their internal affairs. But in the case at bar the merger was effected some time in May or June, 1928, whereas the examination did not take place until November, 1928, at least five months, and perhaps six months, later. According to the testimony of defendant himself, the extreme limit was three months. Hence, if we accept his testimony, it does not show that the merger was the cause of the delay, and consequently the pendency of the merger proceedings was no defense or excuse.

The defendant, appellant, next urges that reversible error was committed by the court in its charge wherein it dealt with the question of punishment and where it appealed to the jury to " give to the people of the State, to the depositors in our banks and trust companies, and give to all who rely, and have a right to rely, upon the honesty and integrity of men in public office — give to all, the protection, the safeguard that the just and the fearless enforcement of the law will provide and afford." There is obviously no error here nor merit in this objection. Nor are other similar objections to the charge worthy of being set out at length. Suffice it to say in relation to a criticism of the trial judge for stating that the punishment must be left with the court, that section 420 of

the Code of Criminal Procedure, as amended by chapter 265 of the Laws of 1927, which took effect upon September 1, 1927, compelled the trial justice to charge that the jurors must not consider the punishment.

Defendant, appellant, next urges that the court erred in its construction of section 39 of the Banking Law in instructing the jury that the provision therein contained required that an examination of banks be made every six months. This statute requires examinations " at least twice in each year " but does not fix any definite time. The learned judge charged as matter of law that the statute made it the duty of defendant to make or cause examinations to be made approximately every six months. The table of examinations which had been made of these Ferrari banks shows that the intervals between examinations had been approximately six months, save the last examination which was nearly a year after the one previous. The brief of appellant urges that the law would be satisfied by two examinations in any calendar year, even if those examinations occurred approximately on the first and last days of the year. The contention of the appellant is unreasonable, whereas the charge of the court not only applied a more reasonable construction to the statute but safeguarded his statement by the use of the word " approximately," and is in accordance with the uniform practice of the Banking Department.

The defendant, appellant, next urges that it was reversible error to deny the motion of defendant for a change of venue. This motion was made upon the ground that from every newspaper account in the metropolitan newspapers following the failure of the City Trust Company and various investigations subsequent thereto, it was believed that the people of the community had formed an ineradicable opinion that the defendant was guilty, and it was urged that he could not obtain a fair and impartial trial in New York county. The answer to this contention is that twelve impartial jurors were selected out of ninety-five talesmen examined and that the counsel for defendant stated that he was satisfied with the jury as chosen. This is not a case of a court speculating upon a motion for a change of venue before the trial, but a case where the record shows that a jury has been chosen of twelve fair and impartial jurors and, in addition and of more importance, that every one of the twelve was pronounced " acceptable " by counsel for defendant.

The defendant, appellant, next urges that the remarks of the district attorney in his closing address to the jury were such as were

calculated to inflame and arouse the prejudice and passion of the jury and to constitute an invasion of the defendant's right to a fair and impartial trial. It is not necessary unduly to prolong this opinion by discussing this objection at length. It suffices to say that there is no merit whatever in this contention.

Finally, the appellant seeks to rely upon other alleged errors of less consequence, all of which have been duly considered but none of which are of sufficient importance to require discussion.

It follows that the judgment and order appealed from should be affirmed.

DOWLING, P. J., McAVOY, MARTIN and SHERMAN, JJ., concur.

Judgment and order affirmed.