In the Matter of FREDERIC DUDLEY KOHLER (Also Known as FREDERIC D. KOHLER), an Attorney, Respondent.

First Department, April 6, 1934.

*Kenneth E. Walser* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*Guernsey Price* of counsel [*Reeves, Todd, Ely, Price & Beaty*, attorneys], for the respondent.

FINCH, P. J.   This is a motion to confirm the report of a referee sustaining the charges of the petitioner that the respondent has been guilty of professional misconduct.

Respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court, Second Department, on March 4, 1915.

At the conclusion of a painstaking and praiseworthy report the referee makes the following findings of fact, which are amply sustained by the record, consisting of 1,088 pages of testimony and 125 exhibits:

(1) The respondent placed an order with Munds & Winslow for the sale of 200 shares of Auburn stock and represented that he had this stock and would deliver it; the representation was false and made to and did induce the sale and resulted in a loss

to the brokers, which the respondent has failed to pay except for one small amount.

(2) The respondent placed the order with Munds & Winslow knowing that if a loss occurred he would be unable to meet it and the loss would fall on the brokers.

(3) In order to secure a stay of execution of a dispossess warrant the respondent represented to the attorney for the landlord that on March 4, 1931, he would become entitled to and could earn a commission sufficient to pay the accrued rent by virtue of a closing of a mortgage transaction fixed for that date at the office of H. H. Snedeker; that the respondent knew when the representation was made that no such closing was fixed or could be fixed for that date, and that no such commission would then be earned and he had no right to assign it.

(4) The respondent prepared a paper in the form of an affidavit for use in the dispossess proceeding in which he falsely and knowingly asserted an agreement to stay execution until May 1, 1931, and presented this paper to the court on the return motion but did not sign or swear to it and withdrew it the next day.

(5) That by his own testimony introduced to meet the petitioner's evidence the respondent has shown himself guilty of conversion of $5,000 face value of bonds belonging to a client.

(6) Throughout the record the respondent has been guilty of evasion and attempt to deceive and mislead this court by his evidence.

In reference to items (1) and (2), the petitioner offered and was permitted to prove other transactions with brokers in which the respondent had bought or sold securities and, when a loss occurred, refused to meet his obligations. This evidence was competent to prove an intent and a common plan. (*People* v. *Hudson Valley Construction Co.*, 217 N. Y. 172; *People* v. *Duffy*, 212 id. 57; *People* v. *Peckens*, 153 id. 576; *Mayer* v. *People*, 80 id. 364; *People* v. *Warder*, 231 App. Div. 215; *People* v. *Malone*, 205 id. 257; *Bliss* v. *Sickles*, 142 N. Y. 647; *Hall* v. *Naylor*, 18 id. 588.) In addition, the respondent was given ample opportunity to meet the testimony of these witnesses called by the petitioner. The referee has found that all these transactions were similar, and the employees of the various brokers testified that when the respondent placed orders with them to sell, delivery of the stock was promised. In every case where the broker had proceeded to judgment, judgment was taken on default because the respondent was " too busy " to defend the case. In regard to these transactions the referee says: " The similarity of all these transactions to the one in question is evident, I think, and to my mind showed a consistent purpose on

the respondent's part to speculate in the securities through selling or buying, promising delivery in the case of sales, to attempt to persuade the brokers to carry him when a loss occurred, to fail to pay any loss which might result, and to enter into the transaction knowing perfectly well that he could not meet any loss which might result."

The referee further says: " In view of my conclusions and the balance of the testimony, it is hardly necessary to consider this phase of the case and the evidence has not been material in the conclusions which I have reached."

In view of this disposition by the referee, this court likewise makes no finding in reference to these transactions.

In reference to item (5), although this charge was not among those in the original petition, yet the referee properly considered it as an additional charge. (*Matter of Horovitz*, 228 App. Div. 484.) It appears that ample time was allowed respondent to meet this additional charge and also that respondent did not wish any further time within which to meet the same.

This charge is somewhat offset by the nature of the securities. It appears that a client of respondent sent some $250,000 face value of bonds to respondent for the purpose of raising a loan of $5,000 on them. While the referee properly found that the respondent did not have the authority to use any of these bonds for his own account and that he converted these bonds when he put up $5,000 of them as margin for the purchase of 100 shares of stock on his own account, yet it appears that the client subsequently ratified this use of the bonds, which while it does not excuse the conversion, yet tends to mitigate to some extent the act and shows that the relationship between the client and respondent was such as to make the consequences of the conversion less serious.

Concerning item (6), the referee says in part as follows: " To support his claim of means he testified that he was the owner of numerous securities of value, and then on cross-examination found himself in a position of having testified in supplementary proceedings that he did not own these securities and of producing evidence himself that he had given them away.

" He was then reduced to claiming that his original testimony meant and was intended to be understood that he held them in trust. Then he testified that he expected large sums from various sources and cross-examination developed that he had no reasonable expectation then of collecting any of these sums. Lastly he attempted to show equities in other accounts which he could have used, and further inquiry developed that at the time there were no such equities and when subsequently he realized an equity he

diverted it to other purposes. The record leaves little doubt that these were three instances of deliberate misstatement intended to mislead the Court."

Under this item it seems unnecessary to cite further similar evidence from this voluminous record.

The respondent should be disbarred.

MERRELL, MARTIN and TOWNLEY, JJ., concur.

Respondent disbarred.