Jasen, J.
This appeal presents a question involving the nature and extent of permissible cross-examination of a criminal defendant concerning crimes which are not charged in the indictment.
Defendant was the president of Safety Circuit Corporation which appears to have been in financial difficulty in 1964. Roslyn Gladstone purchased an account receivable of the corporation from defendant on September 25, 1964 for $1,000. Defendant signed a letter to Mrs. Gladstone representing that the receivable was unencumbered. Actually, defendant had previously assigned this account receivable to one Lester Balagur as security for a loan and Mrs. Gladstone was consequently unable to collect it. Defendant admitted during his direct testimony at trial that the account had been assigned twice. His only defense was that Mrs. Gladstone’s husband acted as her agent and knew of the prior assignment. Mr. Gladstone testified for the defense, but denied that he knew of the prior assignment. Defendant was convicted after trial by jury of grand larceny *244 in the first degree and sentenced to imprisonment for 2% to 5 years. The Appellate Division unanimously affirmed.
On appeal defendant contends that he was denied a fair trial because he was improperly cross-examined concerning other criminal acts. The record discloses that the cross-examination of defendant was extensive, and that the District Attorney attempted to impeach his credibility by inquiry into some 22 alleged similar instances of misconduct. The allegations of defendant’s other misconduct involved numerous worthless checks, repeated mortgaging of a car which he did not own, sale of mortgaged property upon the misrepresentation that the property, was unencumbered, wrongfully retaining money received as agent in the sale of a car, and refusal to return or pay for a valuable ring received from a jeweler on approval.
The nature and extent of cross-examination is subject to the sound discretion of the Trial Judge (Langley v. Wadsworth, 90 N. Y. 61, 63.) It is well settled that a defendant who chooses to testify may be cross-examined concerning any immoral, vicious, or criminal acts which have a bearing on his credibility as a witness. (People v. Webster, 139 N. Y. 73; Richardson, Evidence [9th ed.], § 510.) The offenses inquired into on cross-examination to impeach credibility need not be similar to the crime charged, and questions are not rendered improper merely because of their number provided they have some basis in fact and are asked in good faith. (People v. Sorge, 301 N. Y. 198, 200; People v. Alamo, 23 N Y 2d 630.) Nor does a negative response by a defendant preclude further inquiry by the prosecutor in a legitimate effort to cause the defendant to change his testimony. Otherwise, a ‘‘ witness would have it within his power to render futile most cross-examination.” (People v. Sorge, supra,p. 201.)
All of the transactions concerning which defendant was cross-examined involve allegations of obtaining money by worthless checks or by other false representations and were, therefore, relevant to impeach his credibility as a witness. The inquiry into these transactions to impeach defendant’s credibility, therefore, was within the range of the trial court’s discretion.[1] *245 (People v. Sorge, supra, pp. 201-202; People v. Casey, 72 N. Y. 393, 398-399.)
In addition to cross-examining the defendant as to these numerous previous criminal acts, the District Attorney also used documentary evidence to assist his examination. The use of this documentary evidence during cross-examination, the defendant maintains, constitutes impermissible use of extrinsic evidence on collateral matters.
The general rule is that a cross-examiner cannot contradict a witness ’ answers concerning collateral matters by producing extrinsic evidence for the sole purpose of impeaching credibility. (People v. Sorge, supra, p. 201; People v. McCormick, 303 N. Y. 403; People v. Duncan, 13 N Y 2d 37; People v. Perry, 277 N. Y. 460; People v. Malkin, 250 N. Y. 185; Richardson, Evidence, supra, §§ 503, 510.) However, an exception to this rule exists where the evidence soug'ht to be introduced is relevant to some issue in the case other than credibility or if independently admissible to impeach the witness. (3 Wigmore, Evidence [3d ed.], §§ 1003, 1004, 1021; CPLR 4513; State v. Gilmore, 42 Wn. 2d 624 [1953]; People v. Clark, 63 Cal. 2d 503, 505; Hanover Ins. Co. v. Johnson, 397 S. W. 2d 904 [Texas, 1965]; Commonwealth v. Heller, 369 Pa. 457, 463 [evidence of other offenses tending to prove motive can be used to contradict a defendant’s answers on cross-examination]; 3 Wharton’s Criminal Evidence [11th ed., 1935], § 1293; 98 C. J. S., Witnesses, § 633; cf. Attorney-General v. Hitchcock, 1 Exch. 91, 99; cf. Richardson, Evidence, supra, § 503; cf. comment, Use of Bad Character and Prior Convictions to Impeach a Defendant-Witness, 34 Fordham L. Rev. 107, 111-112 [1965]; cf. United States v. Herr, 338 F. 2d 607, 611 [7th Cir., 1964], cert. den. 382 U. S. 999.) The reason for this exception to the collateral evidence rule is evident from the policy considerations underlying the general rule. The collateral evidence rule is said to rest upon auxiliary policy considerations of preventing undue confusion of issues and unfair surprise by extrinsic testimony. (3 Wigmore, supra, §§ 979, 1002.) Also, testimonial errors concerning distant and unconnected points are of inferior probative value.
However, the objection of confusion of issues is inapplicable if the evidence sought to.be introduced is admissible for any *246 purpose other than contradiction. Likewise, it is not unfair to expect a party to refute testimonial errors when the subject of the error is a material issue in the case, for upon such subjects the parties should in any event come prepared. Therefore, the policy objections to the contradiction of a witness’ answers are inapplicable if evidence of the fact contradicted would be admissible for any purpose independent of the contradiction. It follows that a fact is not a collateral matter if it could be shown in evidence for any purpose independent of the contradiction. (State v. Gilmore, supra; People v. Clark, supra; United, States v. Herr, supra; 3 Wigmore, supra, §§ 1003, 1004,1021.)
Thus, when a witness testifies concerning a fact material to the case, he may be contradicted either by cross-examination or by introduction of other evidence. (Wells v. Kelsey, 37 N. Y. 143; Hynes v. McDermott, 82 N. Y. 42, 52; Becker v. Koch, 104 N. Y. 394; Carlisle v. Norris, 215 N. Y. 400, 410; 1 Mottla, New York Evidence, Proof of Cases [2d ed., 1966], § 431; 3 Wigmore, supra, §§ 1003,1004,1021; 3 Wharton’s Criminal Evidence, supra, § 1293; 98 C. J. S., Witnesses, supra, § 633; People v. Gilmore, supra; People v. Clark, supra.) Also, evidence of other crimes has long been held admissible to establish the motive or intention of a defendant. (People v. Molineux, 168 N. Y. 264; People v. Dales, 309 N. Y. 97.) It follows that where intention to defraud is an essential element of the crime charged, such as here, evidence competent to establish criminal intention is not a collateral matter with respect to cross-examination. (State v. Gilmore, supra; People v. Clark, supra; 3 Wigmore, supra, §§ 1003,1004, 1021; Commonwealth v. Heller, supra.)
The issue, therefore, narrows to whether defendant’s answers on cross-examination were contradicted, and, if so, whether the evidence used to impeach his answers was admissible for any purpose independent of the contradiction.
Nine documents relating to seven distinct transactions were utilized in the cross-examination of defendant. Defense counsel did not object to the use of two memoranda relating to defendant’s refusal to return or pay for a valuable ring which he received from a jeweler on approval. Documents relating to an assignment of letters patent were also used. Defendant *247 admitted the transaction, but the trial court halted the cross-examination concerning this transaction because the prosecution had failed to prove any wrongdoing.
The transactions to which defendant objected to the use of documentary evidence during cross-examination are five — three instances of defendant’s mortgaging a 1962 Cadillac which he did not own and two examples of passing worthless checks. However, a close examination of the record reveals that defendant admitted all but one transaction during cross-examination—that of a chattel mortgage of a 1962 Cadillac to one Florence Goldfarb. Concerning this one transaction, defendant first admitted during cross-examination that he gave the chattel mortgage, and defense counsel stipulated that defendant received $4,000 from Florence Goldfarb for the chattel mortgage when in fact he did not own the car. Defendant then repudiated his counsel’s stipulation, stating that he did not obtain $4,000 from Florence Goldfarb, but that the chattel mortgage was to Hy Gold or Hy Goldfarb. At this juncture, defendant basically admitted the transaction, but questioned the identity of the mortgagee. His answers, however, were highly evasive and the prosecutor handed him a copy of the chattel mortgage. Defendant then admitted that the signature on the mortgage was similar to his own, but denied signing the exhibit. He was shown the original chattel mortgage at the conclusion of his cross-examination, but also denied signing the original document.
As to this one transaction which defendant denied, we conclude that the use of a copy and the original of the chattel mortgage during cross-examination does not constitute improper impeachment on a collateral matter since the documents not only impeached defendant’s credibility, but were also independently admissible on the essential issue of defendant’s intention to defraud in the crime charged.
The rules governing the admissibility of evidence of other crimes represent a balance between the probative value of such proof and the danger of prejudice which it presents to an accused. When evidence of other crimes has no purpose other than to show that a defendant is of a criminal bent or character and thus likely to have committed the crime charged, it should be excluded. “ Where, however, it is relevant to negative the *248 existence of accident or mistake, or to show the intent or motive with which the defendant acted, or a common scheme or plan, its probative value is deemed to outweigh the danger of prejudice, and the rules dictating exclusion will yield.” (People v. Dales, supra, p. 101; see also, People v. Molineux, supra, pp. 291-294; People v. Gaffey, 182 N. Y. 257; 2 Wigmore, supra, §§ 300-307; McCormick, Evidence [1954], § 157.) Evidence of other similar crimes is particularly appropriate where, as in the instant case, the defendant is charged with larceny by false pretenses. (People v. Molineux, supra, pp. 297-299; People v. Pechens, 153 N. Y. 576; Mayer v. People, 80 N. Y. 364.)
In this case defendant admitted obtaining $1,000 from Mrs. Gladstone by assigning an encumbered account receivable to her. Since he admitted the transaction, his intention is the only fact in dispute. However, the acts involved in assigning the receivable are equivocal, and the underlying intention is not easily inferred from the acts alone. Thus evidence of successive similar misrepresntations by defendant is crucial in attempting to ascertain defendant’s intention concerning the crime at bar. (See, e.g., People v. Dales, supra, p. 101; People v. Molineux, supra, pp. 297-299; People v. Peckens, supra; Mayer v. People, supra.) In such cases it is recognized that “ proof of intent is often unobtainable except by evidence of successive repetitions of the act.” (People v. Molineux, supra, p. 298.)
Analytically, the problem is one of the similarity of the other misconduct with the crime charged. (People v. Dales, supra, p. 101; People v. Molineux, supra; 2 Wigmore, supra, § 302; Richardson, supra, § 182.) To quote from Professor Wigmore,
‘ ‘ Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance.” (2 Wigmore, supra, § 302, p. 200.)
Here, the evidence of defendant’s other misrepresentations is highly relevant on the issue of his intention to defraud in the crime charged and discloses a pattern of obtaining money by false pretenses over a two-year period prior to the crime charged. (Fisch, New York Evidence [1959], § 217; People v. Goldstein, 295 N. Y. 61, 65; People v. Dales, supra; People v. *249 Thompson, 212 N. Y. 249; People v. Shulman, 80 N. Y. 373n., 376n. [76 N. Y. 624]; cf. People v. Peckens, supra; cf. People v. Warder, 231 App. Div. 215.) There can be no doubt, then, that evidence that defendant mortgaged a 1962 Cadillac which he did not own had an important bearing on the vital issue of whether the defendant assigned the account receivable with intent to defraud. Accordingly, evidence of this chattel mortgage was admissible on the issue of defendant’s intention in respect to the crime charged, and contradiction of defendant’s answers concerning this mortgage, therefore, was not a collateral matter.
We conclude, therefore, that the cross-examination of defendant and the introduction of documentary evidence concerning these other crimes was proper.[2] This evidence was relevant to the crucial issue of defendant’s intention to defraud, as well as to his credibility. It follows that the jury was properly instructed that they could give this evidence its logical probative weight on the issues of defendant’s credibility and intention.
We note that procedural orderliness generally mandates that a party adduce all its proof during its direct case (6 Wigmore, supra, § 1873.) This would have been the better practice in the instant case. (Cf. 2 Wigmore, supra, § 307.) However, the trial court has broad discretion over the nature and extent *250 of cross-examination (Langley v. Wadsworth, 99 N. Y, 61, supra), including the right to vary the prescribed order of the trial and the normal order of proof. (Code Crim. Pro., § 388; cf. People v. Koerner, 154 N. Y. 355, 367-369; cf. People v. Seiler, 246 N. Y. 262.)
Here, the People established a prima facie case of defendant’s intention to defraud by evidence that he assigned the same account receivable twice while representing to the second purchaser that the account was free and clear. In defense, the defendant testified that the second assignee (complainant) was chargeable with knowledge that the receivable had been previously assigned. Both the second assignee and her husband denied knowledge of the prior assignment. At this juncture, the People were confronted with a novel and unexpected explanation. The use of documentary evidence relevant to defendant’s intention to defraud during cross-examination was within the sound discretion of the trial court under these circumstances. (Langley v. Wadsworth, supra; People v. Koerner, supra.)
The court did, however, permit one clear error. It is settled that reversible error is committed when a prosecutor with knowledge of an acquittal cross-examines a defendant concerning the criminal charge on which he has been acquitted. (People v. Santiago, 15 N Y 2d 640.) This is in keeping with the general rule that knowing use of false evidence or allowing it to remain uncorrected denies due process. (People v. Savvides, 1 N Y 2d 554; cf. Napue v. Illinois, 360 U. S. 264, 269.)
The record discloses that defendant was asked near the close of his lengthy cross-examination about a $100 check which he issued to one Charles Mendell in 1964. Defendant replied, “ The Judge threw that out in the courtroom.” His attorney’s request for a mistrial was denied.
The back of the information pertaining to the Mendell check indicates that the charge was tried in the Nassau County District Court and dismissed at the close of the prosecution’s case on February 25,1965. This dismissal is tantamount to acquittal of the charge after trial, and the cross-examination of defendant concerning this check was, therefore, error. (People v. Cascone, 185 N. Y. 317, 334; People v. Santiago, supra.)
*251 Our decision in Santiago {supra) is inapposite, however, as here the record discloses that the District Attorney questioned defendant in good faith and in ignorance of his acquittal of the charge involving the Mendell check. Specifically, the District Attorney demonstrated his good faith at trial by showing that a “ print record ” which he had before him was complete to June 4,1965 and showed that defendant had not been tried since 1963. Defendant’s February, 1965 acquittal of the Mendell check charge did not appear on the District Attorney’s record. We note that defendant’s counsel and the Trial Judge both remarked that they were not accusing the District Attorney of bad faith in regard to the Mendell check.
Logically, the inference the jury might draw from this error was that defendant had been charged concerning the Mendell check and had been acquitted. Certainly, this one answer in itself cannot have influenced the result in this case in view of the strong evidence of defendant’s guilt and the proper cross-examination of defendant concerning 21 other similar fraudulent transactions and worthless checks which were more damaging to his credibility. Under these circumstances, the error is harmless beyond a reasonable doubt. (Code Crim. Pro., § 542; see, e.g., People v. Kingston, 8 N Y 2d 384; Chapman v. California, 386 U. S. 18; Fahy v. Connecticut, 375 U. S. 85.)
Finally, defendant contends that the trial court committed reversible error by commenting upon his right to appeal his conviction. However, there was no objection or exception to that part of the charge and no request was made to charge differently. This alleged error, therefore, is nonreviewable. (Code Grim. Pro., § 420-a; People v. Simons, 22 N Y 2d 533, 541; People v. Feld, 305 N. Y. 322, 332.)
Accordingly, the judgment of conviction should be affirmed.

. With the exception of one transaction involving a check issued to one Charles Mendell concerning which defendant was tried and acquitted prior to the instant trial. This incident is discussed at pages 250 and 251 of this opinion.

. Although the Trial Judge initially stated that use of documentary evidence during cross-examination of defendant was admissible to impeach his credibility, the court subsequently ruled during the same cross-examination that this evidence was also admissible on the issue of defendant’s intention in the crime charged. The People established a sufficient relationship between the crime charged and the alleged other criminal acts to justify admission of this evidence of other crimes on the issue of defendant’s intention. Defendant was then presented on redirect examination with the opportunity to rebut all alleged instances of his other misconduct and to establish any purported lack of relationship between the alleged misconduct and the crime charged. The record does not support the dissenters’ contention that defense counsel was prevented from exploring the relationship between the alleged other misconduct and the crime charged during redirect examination. To the contrary, defense counsel was afforded wide latitude in asking defendant specific questions on redirect examination to show the circumstances of his other alleged misconduct. The lack of factual support in the record for the dissenters’ position is shown by the fact that defendant has not even argued in this court that he was prevented from establishing any purported lack of relationship between the other alleged misconduct and the crime charged because of the trial court’s rulings during his redirect examination.