Cooke, J. (dissenting).
I dissent. I vote to reverse the order of the Appellate Division and to grant the defendant a new trial.
The majority, relying on People v Acevedo (32 NY2d 941), holds that the testimony relating to the uncharged crime of rape "was admissible to complete the narrative of the episode and to establish the complainant’s opportunity to identify defendant as her assailant”.
In Acevedo, which presented a factual situation similar to that here, the complainant testified, in narrative form, as to both the robbery and the uncharged rape. On appeal, a unanimous Court of Appeals found valid the People’s contention that, as the rape was part of the single episode resulting in charges against the defendant, its inclusion in the narrative was proper.
In its ruling today on the scope of the testimony held to be admissible under the protective umbrella of narration, the present court goes far beyond Acevedo. On the People’s direct case, the questioning of complainant proceeded as follows:
"Q. What happened when you lay on the ground? A. He had intercourse with me.
"Q. Did he do anything with respect to his clothes? A. He unzipped his pants.
"Q. And then what did he do? A. I don’t understand.
"Q. What did he then do Miss * * *. You have to tell the jury.
"THE COURT: You must tell us, Miss. We know that it’s not a pleasant thing for you but you must tell us in detail exactly what he did and you may not use conclusory words
*934 such as, 'He had intercourse with me.’ Just exactly what did he do?
"THE WITNESS: Well, I guess he—
"THE COURT: What did he do with himself first? He unzipped his pants and what did he do then?
"THE WITNESS: He took out his penis.
"Q. What did he do after that? A. He went inside me.
"Q. What degree of physical dress were you in at that time? A. I had nothing on.
"Q. Where were your clothes of your own knowledge? A. They were piled up behind me.
"Q. I can’t hear you. A. They were piled up behind me.
"Q. Are you familiar with the word 'ejaculation’? A. (Witness indicating affirmatively)
"Q. Did that occur? A. Yes, it did.
"Q. Where? A. Partly inside and partly on the ground.
"Q. And during—strike that. What was the next thing that happened, Miss * * *, after you say he went inside you and after that was over? A. Well, he zipped his pants up and left.
"THE COURT: Wait just one moment. How long did this period take from the moment that he entered you to the moment that he ejaculated?
"THE WITNESS: I don’t know. Maybe a minute. I don’t know.
"THE COURT: At that time, what were your relative positions?
"THE WITNESS: I was lying flat.
"THE COURT: And, what was he doing?
"THE WITNESS: He was on his knees at my feet, or closer. He must have been closer. I could see him by lifting up my head.
"Q. Were your stomachs touching? A. I don’t remember.
"THE COURT: How far was his face from your face as he was in you?
"THE WITNESS: I wasn’t looking.
"THE COURT: Now, how far was his face from your face?
"THE WITNESS: I guess it must have been close.
"THE COURT: How close?
"THE WITNESS: I don’t really remember. I really don’t remember.” (Emphasis supplied.)
*935 The testimony, according to the majority, was admitted not only "to complete the narrative,” but also "to establish the complainant’s opportunity to identify defendant”.
The rules governing the admissibility of other crimes represent a balance between the probative value of such proof and the danger of prejudice which it presents to an accused (People v Schwartzman, 24 NY2d 241, 247). The probative value of the testimony detailing the rape was, at best, slight and the scales weighed heavy on the side of prejudice.
Identity was in issue, as defendant had raised the defense of alibi. Complainant testified that she observed her assailant in the lobby of her apartment building, in the fourth-floor hallway, on the stairway and on the roof, all at times prior to the alleged rape. From these observations complainant was able to cull a description of the assailant so as to make an identification at trial. Testimony of the uncharged rape added nothing to this identification. This is supported by the following question and answer on cross-examination.
"Q. * * * Now, going back to that roof; on direct examination * * * I think that question was how close was he to your face with respect to this thing that you testified to and you stated, did you not, that you don’t remember how close his face was, you weren’t looking? You remember making that statement? A. Well, I was observing before and after.
"Q. Do you remember making that statement? A. Yes.”
As noted in the dissent at the Appellate Division, the introduction into evidence of lurid and intimate details of the crime, such as penetration and ejaculation, was clearly irrelevant and obviously prejudicial. There was no possible effect of these details other than to outrage the jury.
The statement of the trial court could not undo the damage done. It advised the jury that the "rape” testimony was admitted by virtue of the fact that it related directly to the question of identification.
"I know that it’s difficult to take a matter as poignant as this and to strike it from one’s mind * * *. You are to consider those acts only if you so determine in your search for the answer to the question, did this witness have the opportunity to observe the defendant, under what circumstances and was the observation that she made of the defendant one that was reasonable and correct, but as to the acts of sexual intercourse, forcibly, as described by the witness, you are to *936 disregard them completely in your judgment as to whether or not the defendant committed the acts as set forth in the indictment and with which he is presently charged [to wit, attempted robbery, attempted grand larceny, possession of a weapon].”
Contrary to the conclusion reached by the majority, it is my view that this issue was carefully preserved for appeal by the court. At the outset, defendant’s attorney objected: "If your Honor please, at this time I have to take objection to this testimony as not being relevant or material and highly prejudicial and inflammatory to the rights of my client. The charge, if I may be heard, is attempted robbery, nothing more.” The record reveals that the court, aware of the general scope of the testimony to follow, granted defendant "a continuing objection to this line of examination” (emphasis supplied).
The error committed by the trial court in admitting the detailed rape testimony, viewed in the light of the court’s statement to the jury, was of such a nature as to deprive the defendant of a fair trial. "[I]f in any instance, an appellate court concludes that there has been such error of a trial court * * * as to have operated to deny any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction and grant a new trial” (People v Crimmins, 36 NY2d 230, 238).
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur in memorandum; Judge Cooke dissents and votes to reverse in a separate opinion.
Order affirmed.