■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAUL COLGAN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered June 25, 1975, convicting him of perjury in the first degree (three counts), upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. On August 10, 1971 defendant, then 19 years of age, while at the Green Isle Bar in the company of his brother, witnessed a murder. Notwithstanding the fact that there were 30 other patrons in the bar at the time of the shooting, defendant emerged as the sole eyewitness. All the other patrons claimed they had not witnessed the incident. Defendant appeared before the Grand Jury on September 8, 1971 and testified that a man known to him as Ricciardi (alias Tony Long) took out a pistol, shot one Reda, and then left the tavern. From the time of his Grand Jury testimony and continuing up to February, 1973, defendant intermittently received threats against his own life and well-

being as well as against his family. He relayed the threats to the office of the District Attorney, advised the District Attorney that he was unwilling to identify Ricciardi as the killer and voiced his intention of leaving the jurisdiction. Forthwith, the District Attorney had him arrested as a material witness and confined to jail on high bail. Defendant remained in jail for approximately one month, unable to furnish the bail set. During his confinement he changed his mind and indicated his willingness to co-operate with the prosecution and to testify in accordance with his testimony before the Grand Jury. Thereupon his bail was reduced and, by the posting of $2,000 cash, his father effected his release. On April 18, 1973 defendant importuned both the District Attorney and the Trial Judge that he not be forced to testify against Ricciardi as he feared for his life. Notwithstanding such request, defendant was sworn. In essence he recanted his Grand Jury testimony. Thereupon the trial court granted an order of dismissal and released Ricciardi. Based on defendant's trial testimony, he was indicted for perjury. On the trial of his indictment for perjury defendant took the stand and attempted to establish his affirmative defense of duress, but was denied the right to establish the existence of threats made to him directly and to his family. This was error. Certainly, his motivation and state of mind were elements as to his reluctance and fear in identifying Ricciardi as the murderer. Section 40.00 of the Penal Law states: "Duress 1. In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was coerced to do so by the use of threatened imminent use of unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist. 2. The defense of duress as defined in subdivision one of this section is not available when a person intentionally or recklessly places himself in a situation in which it is probable that he will be subjected to duress." Section 25.00 (subd 2) of the Penal Law provides: "When a defense declared by statute to be an 'affirmative defense' is raised at a trial, the defendant has the burden of establishing such defense by a preponderance of the evidence." Furthermore, the prosecutor's cross-examination of defendant as to the source of the bail money was improper. Insinuations that defendant had obtained the money from Ricciardi as a bribe to remain silent created an atmosphere of prejudice, notwithstanding that the innuendo lacked foundation in fact. It is well established that a defendant who testifies may be cross-examined concerning any immoral, vicious or criminal acts which have a bearing on his credibility as a witness. "The offenses inquired into on cross-examination to impeach credibility need not be similar to the crime charged, and questions are not rendered improper * * * provided they have some basis in fact and are asked in good faith" (People v Schwartzman, 24 NY2d 241, 244; People v Alamo, 23 NY2d 630). Here, there was no basis in fact to indicate that defendant's bail money came from Ricciardi but, on the contrary, the record disclosed that defendant's father posted the money from his own personal resources. Reference by the prosecutor in his summation to the source of the bail money compounded the error and was likewise improper. On his direct examination defendant admitted he had been previously convicted of a robbery. On cross-examination the extent to which the prosecutor dwelt on the conviction was obviously intended to establish more than the identity of defendant or to affect his credibility, especially since he had admitted the conviction in his direct testimony. In the fact-finding process, as noted above, the cross-examination of a defendant with respect to his prior criminal, vicious or immoral acts may be allowed solely to impeach his

credibility. "Evidence of prior specific criminal, vicious or immoral conduct should be admitted if the nature of such conduct or the circumstances in which it occurred bear logically and reasonably on the issue of credibility" *(People v Sandoval,* 34 NY2d 371, 376). In *Sandoval (supra)* the court also noted (p 375): "As we wrote in *People v Schwartzman, (supra,* [24 NY2d 241] at p 247): 'The rules governing the admissibility of evidence of other crimes represent a balance between the probative value of such proof and the danger of prejudice which it presents to an accused. When evidence of other crimes' has no purpose other than to show that a defendant is of a criminal bent or character and thus likely to have committed the crime charged, it should be excluded.' Thus, a balance must here be struck between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of defendant's credibility on the one hand, and on the other the risk of unfair prejudice to the defendant, measured both by the impact of such evidence if it is admitted after his testimony and by the effect its probable introduction may have in discouraging him from taking the stand on his own behalf." In view of the errors herein a new trial is warranted. Martuscello, Acting P. J., Cohalan, Brennan, Munder and Shapiro, JJ., concur.