■    THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VIDA GISSENDANNER, Appellant.—Judgment affirmed. Memorandum: On this appeal the only issue worthy of comment concerns the refusal of the Trial Judge to authorize the issuance of a subpoena compelling the production of the personnel record of two police officers who testified for the prosecution. The confidentiality of police personnel files is now established under section

50-a of the Civil Rights Law. That section provides that no order for production of such a file shall be made "without a clear showing of facts sufficient to warrant the judge to request records for review" (Civil Rights Law, § 50-a, subd 2). It is only upon that "clear showing", after a hearing, that a court may examine the records *in camera* and thereafter it is only "those parts of the record found to be relevant and material" which shall be made available to the defense (Civil Rights Law, § 50-a, subd 3; see *People v Puglisi,* 44 NY2d 748). The defendant concedes that she has no reason to believe that the personnel files contain any information which would be appropriate for cross-examination of the police officers. Having thus acknowledged that the statutory requirement cannot be met, we conclude that the trial court properly declined to authorize the issuance of the subpoena. The statute is designed to prevent the kind of "fishing expedition" which the dissenter would permit. All concur, except Cardamone, J., who dissents and votes to reserve decision and remit the matter for further proceedings in accordance with the following memorandum: Appellant, Vida Gissendanner, appeals from a judgment convicting her of the criminal sale of a controlled substance in the third degree upon which she received a one-year to life sentence. The basic issue presented is whether the trial court abused its discretion when it denied defendant's request for an *in camera* inspection of the confidential personnel file of the police officers who testified at the trial. At trial the chief prosecution witness was an undercover police officer, Ronald Eisenhauer, who testified that during the evening of June 26, 1975, he and three other plainclothes officers proceeded to the defendant's home in Rochester. He stated that he had met the defendant previously at this address and after knocking on the door for several minutes was about to leave when he was met by the defendant coming up the sidewalk. He claims that the defendant invited him in and negotiated a cocaine sale for which he paid $40. Later, he returned to the automobile where the other police officers had been waiting. One of the other officers in the surveillance car, David Grassi, testified that he drove Officer Eisenhauer and the other two officers and while they remained in the car Eisenhauer went to the door of defendant's house where he was approached by a woman whom Grassi identified in court as the defendant. The third officer (the remaining officer did not testify), Greece Police Officer Craig Corey, testified that he saw Eisenhauer approach the front door of the building, but his vision was obstructed by a large hedge and he did not see Eisenhauer again until Eisenhauer returned to the automobile. Officer Carey did state, however, that he did not see defendant or, indeed, anyone else in the area during the time Eisenhauer was away from the car. The defendant took the stand and admitted that she had met Officer Eisenhauer on a previous occasion, but denied that she met him on the night in question. In an attempt to discover material to impeach the credibility of Officers Eisenhauer and Grassi, defense counsel sought to subpoena their police personnel records. The trial court refused to sign a subpoena concluding that defense counsel had made no showing of a factual basis for a belief that the personnel files contained any information appropriate for cross-examination. Section 50-a of the Civil Rights Law provides that police personnel records shall be considered confidential and not subject to inspection unless the officer's consent is obtained or a court so orders. Upon a "clear showing of facts" sufficient to warrant a review a court may order the production of the records. If, after examining the records *in camera,* the court decides that they contain material and relevant information, it shall make those parts available to the requesting party. The People contend that in this case, since the

defendant made no allegation that the records contained any impeachment material, it was not error to refuse to allow the defendant access to Eisenhauer's and Grassi's personnel files. There is some merit to defendant's claim that it is logically absurd and a "catch-22" requirement to expect her to allege the existence of incidents that she would have no way of knowing because of the confidential nature of the internal administration of the police department. At the outset the language of *Brady v Maryland* (373 US 83, 87-88) aptly states: "A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant." The quoted provision of the Civil Rights Law has as its ostensible purpose the protection of a police officer against unwarranted intrusion by unauthorized individuals without reason or basis in fact. The statute is not intended to be, however, an inviolate shield preventing a defendant from obtaining relevant material from a witness police officer which bears on that officer's credibility or which might be considered exculpatory of defendant. An *in camera* examination by the Trial Judge as provided for in the statute to determine relevancy of the material before permitting the personnel file to be used for cross-examination adequately safeguards the officers' right to confidentiality of their records and the defendant's right to the benefit of evidence which bears heavily on her guilt or innocence (see *People v Sumpter,* 75 Misc 2d 55). Were it to contain evidence of past misconduct, its withholding would not constitute harmless error *(People v Puglisi,* 44 NY2d 748, 750). Here there was arguably some merit to defendant's denial of being present at the scene of the drug sale which in my view does constitute a "clear showing of fact" sufficient to warrant review of the officers' personnel files. Were they to contain evidence of prior misconduct such fact would constitute *Brady* material exculpatory of defendant as it bears on the officers' credibility. Further, to deny defendant the opportunity to discover evidence that might tend to impeach the credibility of her accusers when there exists a procedure that safeguards the rights of all parties, cuts back to some degree the defendant's fundamental right to confront and cross-examine witnesses against her *(People v Schwartzman,* 24 NY2d 241, cert den 396 US 846). Thus, in my view denial by the trial court to undertake such an *in camera* inspection under the circumstances of this case constituted an abuse of discretion. Accordingly, I dissent and vote to hold this case and remit it to the trial court for an *in camera* inspection of the police officers' confidential files. (Appeal from judgment of Monroe County Court—criminal sale controlled substance, third degree.) Present—Moule, J. P., Cardamone, Dillon, Hancock, Jr., and Schnepp, JJ.