## (July 26, 1984)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERTO OSUNA, Appellant. — Judgment, Supreme Court, Bronx County (Joseph Quinn, J.), rendered on December 15, 1978, convicting defendant of robbery in the first degree and imposing a sentence of 9 to 18 years, affirmed. Sandler, J. P., concurs in a memorandum in which Sullivan, J., concurs; Carro, J., concurs in a separate memorandum; and Fein, J., dissents in a memorandum in which Alexander, J., concurs, all as follows:

Sandler, J. P. (concurring). The defendant was convicted of robbery in the first degree after a jury trial in which it was clearly established that he had been identified under nonsuggestive circumstances, within a few minutes after the robbery, as one of two robbers, by a complainant who had given an exceptionally precise and detailed description of his assailants. In addition, the testimony concerning the unexpected encounter that led to defendant's identification and arrest could reasonably have been interpreted by the jury as proving that the defendant recognized the complainant prior to the identification. In short, notwithstanding the complainant's belated and highly suspect recantation, in which he returned to the witness stand as a defense witness (after having previously identified the defendant in court) to declare that the defendant was not one of the robbers, the evidence of guilt was very strong. ¶ In light of the strength of the evidence, we are not persuaded that reversal of the conviction is required by the undoubted error that occurred when, over timely objection, evidence was elicited that the defendant's sister, observing him in the custody of security personnel and police officers, said: "Oh, no, not again. What did you do this time?" Viewed in context, this clearly inadmissible testimony seems to us more likely to have been understood by the jury as a reference to some prior youthful mischief rather than as evidence of previous criminality comparable to that for which the defendant was on trial. On balance, we see no rational possibility, much less a significant probability, that the error affected the outcome of the trial. (See *People v Crimmins,* 36 NY2d 230, 241, 242.) ¶ Turning to the issue addressed at length in the concurring opinion, we agree that it was error, although not objected to by defense counsel, to have elicited from the Assistant District Attorney who had interviewed the recanting witness his statements to the defense counsel that "I indicated I had interest in only that the right person be prosecuted for this

crime", and that "if this is what the situation is that he's not certain of him and he truly feels this, I mean, I might even make a recommendation to dismiss the case". We see no reason to doubt that in the interview with the witness, conducted with court permission after the witness' direct examination as a defense witness, the District Attorney was in fact acting in good faith in discharging his professional obligation to make sure that it was appropriate to continue with the prosecution in light of the change of position by the complaining witness, and we understand that it may well have been felt appropriate under the circumstances to make clear to the jury the good-faith nature of that interview. Nonetheless the effect of the quoted language was to convey to the jury the opinion of the District Attorney on issues critical to the case, and the possible prejudice inherent in that aspect of the testimony seems to us clearly to have outweighed any possible legitimate probative purpose. We note, however, that in defense counsel's cross-examination of the Assistant District Attorney he, presumably for reasons of trial strategy, deliberately elicited from the witness explicitly that which was implicit in the quoted testimony. Apart from this aspect of the testimony, which was not objected to and does not seem to us to invite our interest of justice jurisdiction (CPL 470.15, subd 3, par [c]), we see no error in the rest of the testimony of the Assistant District Attorney. ¶ Although it is true that the complaining witness' recantation had been severely undermined by the trial prosecutor's cross-examination, the fact remains that the witness persisted in testifying, in apparent contradiction to what he had told the Assistant District Attorney during the interview, that he was at almost all times uncertain of the identification, and that he gave other answers with regard to the interview not consistent with the account of the interview thereafter given in rebuttal by the Assistant District Attorney. In short, there was an appropriate probative purpose in eliciting from the Assistant District Attorney who had conducted the interview his significantly different version of what the witness said during the interview, since the testimony was clearly relevant to the question of whether the recantation was genuine or had been occasioned by the disquiet of the complaining witness at multiple approaches to members of his immediate family by the defendant's mother. As to whether or not testimony should have been permitted in narrative form, we think that presented an issue addressed to the discretion of the Trial Judge, and we perceive no error in his overruling the somewhat belated objections to the form of the testimony.

Carro, J. (concurring). Defendant did not object or in any other way protest the major points he now on appeal ascribes as error. (See CPL 470.05, subd 2; 470.15, subd 4, par [a].) Nor do I believe he could escape conviction in a second trial free of these "errors". He received a fair trial and the errors were, indeed, "harmless". (*People v Crimmins,* 36 NY2d 230, 239 *et seq.*) ¶ One "error" occurred, however, to which several objections were made and which, no matter the harmlessness of it in the context of this trial, was so sufficiently improper that it should be pointed out. ¶ By way of background, the big issue here was the complainant's identification of defendant. Although positive at the time of the arrest (less than an hour after the robbery) and later that day at the precinct (where, also, defendant spontaneously admitted his guilt), at trial the complainant seemed to recant. To be more precise, the complainant first testified, for the prosecution, that defendant was positively the man who had robbed him. Three days later, however, the complainant again took the stand for the defense, this time testifying that defendant was "positively not the individual" who robbed him, because he was nervous that day and "the more I look at him, no, he doesn't look like him." ¶ The following day, under cross-examination, complainant admitted that, as recently as the previous afternoon, he had identified defendant's arrest photo as a picture of his assailant.

He insisted, however, that he was no longer sure that defendant was the one who had robbed him. Much of the redirect and re-cross-examination concerned this interview by three Assistant District Attorneys the afternoon before. Complainant revealed a host of fears and anxieties about contacts between defendant's family and his own, his wife and the recent delivery of their second child, and of course, the possibility that he might have committed perjury. ¶ The prosecutor's skillful questioning showed (and, I might add, he was aided by defense counsel's questioning in showing) that amidst these conflicting emotions the complainant was having difficulty maintaining his certitude as to his identification of defendant. In other words, what was at first a recantation was shown to be nothing more than a last minute case of nerves. ¶ The prosecution unfortunately was not content to leave it at this, but insisted upon then presenting a "parade of rebuttal witnesses". Although the court's advance permission to present rebuttal clearly warned against abuse — "I'm going to hold you to what I consider is proper rebuttal testimony. It will be tightly circumscribed" — in fact, abuse was inevitable when the prosecutor called the bureau chief of the Major Offense Bureau in The Bronx. This Assistant District Attorney had run the three-hour interview of complainant the afternoon before. His testimony was improper in both form and content. Despite timely objection, the court allowed the bureau chief to give a rambling narrative that was anything but "tightly circumscribed". The substance of this testimony was his opinion that the complainant had originally been correct in his identification of defendant. But the particularly objectionable testimony was the following: "I indicated I had interest in only that the right person be prosecuted for this crime, that it appears this is an unusual situation and that I will keep him apprized [sic] as to what goes on in my office and he indicated that he wanted to speak to Mr. Aldea, and I indicated he would and that he should be patient in that if I believe during the conversation, I said to Mr. Moriarty if, you know, if this is what the situation is that he's not certain of him and he truly feels this, I mean, I might even make a recommendation to dismiss the case, and I said, 'stand by. I'll let you know what's going on'". ¶ Obviously, to, in effect, say that he would never prosecute a person whom he was not convinced was guilty, was to improperly pit the honesty and integrity of the bureau chief and his staff against the defendant and the complainant's newly expressed self-doubts. Of course, there was also no effective manner in which defendant could cross-examine such opinion testimony and, in sum, the use of the bureau chief as a witness was both improper and unfair. (Cf. *People v Paperno,* 54 NY2d 294, 301.)

Fein, J. (dissenting). "The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right." (*People v Crimmins,* 36 NY2d 230, 238.) In my view the defendant did not receive a fair trial. ¶ I recognize that in view of the recantation by the sole identifying witness it was probably necessary for the Assistant District Attorney to testify. However, his testimony, as described in the concurring opinion of Justice Carro, plainly exceeded proper bounds. The use of the rambling narrative form was inappropriate and the testimony quoted by Justice Carro plainly and prejudicially pitted the honesty and integrity of the District Attorney and his staff against defendant and the recanting witness. Cross-examination was impossible (*People v Paperno,* 54 NY2d 294, 301). ¶ Albeit such error might be deemed harmless (*People v Crimmins, supra,* at p 239 *et seq.*), there was more. As stated in the court's memorandum for affirmance, there was plain error when, over timely objection, hearsay evidence was received that defendant's sister, when she observed him in custody, said: "Oh, no, not again. What did you do this time?" I am not persuaded by the speculation that the jury understood this as a reference to some prior youthful

mischief rather than as prejudicial inference of a prior uncharged crime. It was patently offered solely to raise an inference of prior criminality and should have been excluded. The prejudice is manifest (*People v Schwartzman,* 24 NY2d 241, 247; *People v Mullin,* 41 NY2d 475, 479). The failure to sustain the defense objection or to give a curative instruction was prejudicial in the extreme (see *People v Ashwal,* 39 NY2d 105, 111). ¶ In my view the combination of these errors in this single witness identification case denied defendant a fair trial and was not merely "harmless error" (see *People v Crimmins, supra,* at p 237 *et seq.*). There is a reasonable possibility that these errors in combination were so substantial as to deny defendant a fair trial and to have contributed to his conviction. Accordingly, they were not harmless (*People v Crimmins, supra,* at p 242). ¶ There should be a reversal and a new trial.