*172 OPINION OF THE COURT
Dominic R Massaro, J.
Was defendant “arrested” when he voluntarily surrendered himself to naval authorities and was ordered not to leave the base? Are defendant’s convictions under the Uniform Code of Military Justice “crimes”? In the reflection of New York Military Law, Andy Shepherd was so placed under arrest; but he is not guilty of committing any crime contemplated by either our military or criminal law. On this record, however, the arrest and conviction for military offenses may be utilized on the issue of defendant’s credibility.
FACTUAL SETTING
In the instant case, Mr. Shepherd was arrested and indicted for the crime of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]) and related assault and weapon possession crimes. The herein questions present themselves in the context of the defense’s opening statement to the jury at trial, wherein Mr. Shepherd, it was emphasized, is “a normal kid, never been arrested for anything in his life * * * was attending college.”[2]
Notwithstanding this representation, while serving as a seaman apprentice in the Recruit Training Command at Great Lakes, Illinois, in 1996, one year prior to the institution of the within prosecution, defendant was charged with four violations of the Uniform Code of Military Justice (10 USC § 801 et seq. [U.C.M.J.]): unauthorized absence (U.C.M.J. art 96 [10 USC § 896]); failure to obey (U.C.M.J. art 92 [10 USC § 892]); restriction breaking (U.C.M.J. art 134 [10 USC § 934]); and assault consummated by battery (U.C.M.J. art 128 [10 USC § 928]). He subsequently pleaded guilty to the unauthorized absence and, following a summary court-martial, was found guilty of two of the three remaining charges: restriction breaking and assault consummated by battery. The sentence imposed was a reduction in rate of pay and forfeiture of two-thirds pay for one month. Upon review of the findings, Mr. Shepherd was separated from naval service with “other than honorable discharge”.
In the exercise of its discretion, this court had in a pretrial determination denied, on the basis of prejudicial effect outweighing probative worth, the prosecutor’s request to use defendant’s summary court-martial record for purposes of *173 impeaching his credibility should he elect to take the witness stand (see, People v Sandoval, 34 NY2d 371 [1974]; CPL 240.43). The People now move anew to inquire into the arrest and the convictions in light of defendant’s opening statement. They characterize it as “misleading and not accurate”. Defendant continues to argue resulting undue prejudice; he urges the court to adhere to its initial preclusion ruling.

SANDOVAL

The nature and extent of cross-examination has always been subject to the sound discretion of the trial court (see, People v Schwartzman, 24 NY2d 241, cert denied 396 US 846 [1969]).
It follows in the normal course of a trial that the use by a prosecutor of prior convictions or proof of the prior commission of specific criminal, vicious or immoral acts to impeach a defendant’s credibility, veracity or honesty on cross-examination is an issue framed by the individual facts and relevant circumstances at hand. The rules governing the admissibility of such evidence must “ ‘balance between the probative value of such proof and the danger of prejudice which it presents to an accused’ ” (People v Sandoval, supra, at 375, quoting People v Schwartzman, supra, at 247). Thus, in the exercise of discretion, and reconciling the interests of the People and the rights of a defendant, the Judge presiding may decide that it is altogether appropriate to allow the prosecutor to raise not only prior conduct as bearing on a defendant’s propensity for lack of candor and deceit, but any prior act which “reveal [s] a willingness or disposition * * * voluntarily to place the advancement of his individual self-interest ahead of principle or of the interests of society” (People v Sandoval, supra, at 377).
ARREST
The court’s analysis begins with the fact that Mr. Shepherd, after having absented himself from his naval command for a period of approximately one month, surrendered voluntarily. He was thereupon detained, that is, ordered not to leave the military base to which he was assigned until charges against him were determined. Mr. Shepherd’s detention, such as it was, consisted solely of this order. He was never handcuffed, physically constrained, nor put in the guardhouse. Indeed, he enjoyed freedom of movement and easily could have left the perimeter of the base.
New York’s criminal statutes do not define “arrest”; and our Court of Appeals has noted that it is difficult to delineate, in *174 abstract principles, the degree of intrusion which elevates itself into an arrest. In People v Chestnut (51 NY2d 14, 20, cert denied 449 US 1018 [1980]), the Court did offer a definition in terms of the level of intensity with which a person’s liberty is interrupted: “when the intrusion involved is of sufficient magnitude, an ‘arrest’ will be said to occur”. Thus, it may be observed, it is this “level of intensity” vis-a-vis the underlying circumstances extant in any given case which is determinative of whether an arrest has been effectuated. This bears no relation to eventual handcuffing or jailing, but rather to an objective view in relation to surrounding circumstances (cf., People v Freeman, 151 AD2d 967 [4th Dept 1989]). And while custodial confinement is the classic form of arrest (see, Dunaway v New York, 442 US 200 [1979]), the defense is in error in the circumstances at bar to argue that Mr. Shepherd was not arrested here.
The Uniform Code of Military Justice enlightens with the military concept of effectuating an arrest: “[a]rrest is the restraint of a person by an order, not imposed as a punishment for an offense, directing him to remain within certain specified limits” (U.C.M.J. art 9 [a] [10 USC § 809 (a)]). This surely is a deprivation of liberty by lawful authority (see, Black’s Law Dictionary 140 [4th ed 1951] [definition of “arrest”]) and makes clear that, while in the military service, Mr. Shepherd was, in fact, ordered into arrest (see, U.C.M.J. art 9 [b] [10 USC § 809 (b)]). The New York Code of Military Justice (Military Law art VII), which is patterned after the Federal code, fully recognizes this form of arrest (see, Military Law § 130.9 [a], [b]).
SUMMARY COURT-MARTIAL
A summary court-martial is the least formal of the three types of courts-martial known to the military (see, U.C.M.J. art 20 [10 USC § 820]; see also, Military Law § 130.20).[3] It is a streamlined trial process involving only one commissioned officer to dispose promptly of relatively minor offenses (see, United States v Booker, 5 MJ 238 [CMA 1977], reconsideration granted and vacated in part 5 MJ 246 [CMA 1978] [nothing *175 precludes jurisdiction over serious offenses]). It provides somewhat less protection for the rights of the accused than other forms of courts-martial, and the maximum imposable punishment is limited.[4] The summary court-martial has no civilian equivalent: it is strictly a creature of statute within the military system (see, U.S.M.J. art 20 [10 USC § 820]; see also, Military Law § 130.20). While it is a “criminal proceeding” at which the technical rules of evidence apply, and at which a finding of guilt can result in loss of liberty and/or property, there is no constitutional right to representation by counsel (see, Middendorf v Henry, 425 US 25 [1976] [not a “criminal prosecution” within the meaning of the Sixth Amendment]; see also, Toth v Quarles, 350 US 11 [1955] [trial to maintain discipline]).[5]
Passing to an analysis of defendant’s conviction(s) by the summary court-martial, it would appear that none of the charges sustained are crimes cognizable under New York law.
“Unauthorized absence”, more commonly known as “absence without leave”, is a peculiarly military offense wherein an enlisted individual
“(1) fails to go to his appointed place of duty at the time prescribed; [or]
“(2) goes from that place; or
“(3) absents himself or remains absent from his unit, organization, or place of duty at which he is required to be at the time prescribed” (U.C.M.J. art 86 [10 USC § 886]).
New York recognizes this offense (see, Military Law § 130.82) despite there being no civilian equivalent contemplated in our criminal law.
“Restriction breaking” falls under a general “disorders and neglects to the prejudice of good order and discipline in the armed forces” (U.C.M.J. art 134 [10 USC § 934]). Here, Mr. Shepherd was charged with leaving his command as an offense *176 associated with his “unauthorized absence”. Again, New York recognizes this offense (see, Military Law § 130.115) despite there being no civilian equivalent contemplated in our criminal law.
Respecting “assault consummated by battery”, Mr. Shepherd was charged under article 128 of the Uniform Code of Military Justice (10 USC § 928) with “unlawfully hugfging]” a female recruit “with his arms”. New York has no present Military Law equivalent. The civil crimes contained in the punitive article of New York’s earlier Military Law were repealed in 1953 (see, L 1953, ch 617; eff July 1, 1953).[6] The line of demarcation was thus fixed between the jurisdiction of civil and military tribunals in New York.
Nevertheless, the People hold forth that this Federal violation has a criminal law equivalent in sexual abuse in the third degree (Penal Law § 130.55). It reads “[a] person is guilty of sexual abuse in the third degree when he subjects another person to sexual contact without the latter’s consent”. Section 130.00 (3) of the Penal Law states that “ ‘[s]exual contact’ means any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying [the] sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing”.
Even were it to be assumed, arguendo, that defendant touched the female recruit “for the purpose of gratifying [the] sexual desire of either part/’, the touching, that is, the “unlawful hug * * * with his arms” as set forth in the specification against him, without more, cannot fairly be said to equate with a “touching of the sexual or other intimate parts of a person” to make for the misdemeanor equivalent. There is no summary court-martial record to substantiate a finding of more serious conduct by Mr. Shepherd.
*177 CONCLUSION
Military tribunals have been recognized in New York since the earliest times (see, People ex rel. Underwood v Daniell, 50 NY 274 [1872]). Our Constitution mandates the necessity of regulating and disciplining the military (see, NY Const, art I, § 6), the Penal Law notwithstanding (see, Penal Law § 5.10 [2]). That our Military Law is less known and cited is not to suggest that this body of statutory enactment is to be treated lightly. To the contrary, the very fact that defendant improperly sought to distance himself from its reach suggests quite the opposite.
Given the within circumstances, then, the fact that defendant, following arrest, pleaded guilty to a military offense cognizable under New York law, and that he was thereafter convicted at a summary court-martial of two additional military offenses, one of which likewise is cognizable under New York law, may be brought to the attention of the jury. Its revelation in light of what has transpired on this record would not now be so prejudicial on the issue of credibility as to warrant its exclusion. In seeking to strike an appropriate balance, however, the People may only inquire, should Mr. Shepherd elect to take the witness stand, “Have you ever been the subject of an arrest and conviction for an infraction while in the military service?” (inquired of in the singular and without specificity as to the underlying facts).
The military offenses of which Mr. Shepherd stands convicted, in and of themselves, are manifestly not “ ‘immoral, vicious or criminal acts’ ” (People v Perez, 44 AD2d 614 [3d Dept 1974], revd on other grounds 36 NY2d 848 [1975]; see also, People v Flynn, 275 App Div 350 [1st Dept 1949]). Considering these offenses in the light of defendant’s attempt to falsely portray himself at the opening of trial as one free of any and all involvement with the law, however, places his credibility directly in issue (see, People v Costello, 112 AD2d 478 [3d Dept 1985] [military offenses relevant on issue of credibility]). His misrepresentation goes to the heart of honesty and integrity, the very essence of a fair trial.

. Transcript, Aug. 6, 1998, at 4.

. The two other forms of courts-martial being the general court-martial, consisting of “a military judge and not less than five members” (see, U.C.M.J. art 16 [1] [A] [10 USC § 816 (1) (A)]; see also, Military Law § 130.16 [1] [A]) and the special court-martial, consisting of “not less than three members; or
“a military judge and not less than three members” (see, U.C.M.J. art 16 [2] [A], [B] [10 USC § 816 (2) (A), (B)]; see also, Military Law § 130.16 [2] [A], [BD.

. “Summary courts-martial may * * * adjudge any punishment not forbidden * * * except * * * confinement for more than one month, hard labor without confinement for more than 45 days, restriction to specified limits for more than two months, or forfeiture of more than two-thirds of one month’s pay” (see, U.C.M.J. art 20 [10 USC § 820]; see also, Military Law § 130.20 [c]).

. In New York, the lack of code provisions for defense counsel with respect to a summary court-martial, as opposed to the requirement for defense counsel where more serious offenses are subject to a general or special court-martial, has been held not to constitute a violation of due process (see, People ex reí. Pantano v Sheriff of. City ofN. Y., 38 Mise 2d 879 [1963]).

. The Joint Legislative Committee to Study the Military Law’s “bill provides a clear and workable basis for the exercise of courts-martial jurisdiction pattern [ed] after the Federal Uniform Code of Military Justice [but] [i]t extends only to military crimes. Civil crimes * * * are excluded from its provisions” (Governor’s Mem approving L 1953, ch 617, 1953 NY Legis Ann, at 351).
“The Committee’s proposed bill will repeal [jurisdiction over civil offenses] of the Military Law and substitute in lieu thereof a new * * * New York Code of Military Justice * * * [Previously] [w]e gave to our courts-martial jurisdiction over all offenses * * * but limited the power * * * to punish * * * Thus, theoretically, [one] could be tried by a general court-martial, found guilty of murder, and sentenced to a maximum of 200 days in jail or a $200.00 fine” (Final Report of Joint Legis Comm to Study Military Law [1953]).