*631 OPINION OF THE COURT
Hancock, Jr., J.
Plaintiff, her husband and their three-year-old daughter, Dina, were residents in an apartment rented from defendant. Dina allegedly sustained injuries as a result of defendant’s negligence in failing to repair a window. A trial before a jury resulted in a verdict for defendant and, on appeal, the Appellate Division affirmed with a divided court. On plaintiffs appeal to this court we consider one issue: whether the trial court committed reversible error in permitting defense counsel to cross-examine plaintiff in contravention of the rule barring the use of extrinsic evidence to contradict a witness’s answers on collateral matters — here, her denial that she had received public welfare funds to which she was not entitled— for the sole purpose of impeaching the witness’s credibility (see, People v Schwartzman, 24 NY2d 241, 245-246; Richardson, EvideriCe § 491 [Prince 10th ed]). For reasons which follow, we conclude that the "collateral evidence rule” was violated and that, in the circumstances of this case, the violation constituted prejudicial error requiring a reversal and new trial.
I
The trial presented a sharp question of fact as to whether, prior to the accident, the window in Dina’s bedroom was broken and in need of repair. Plaintiff testified that there was a hole in the window and that, when she asked defendant to fix it, he merely placed a piece of cardboard over it. Defen *632 dant’s testimony was just to the contrary. He denied placing any cardboard over a hole in the window and said, moreover, that it was not broken prior to the accident. The critical issue for the jury was, thus, the credibility of the two witnesses.
On cross-examination of plaintiff by defense counsel, the following took place:
"Q: Ma’am, did you ever at any time take money that you weren’t entitled to?
"mr. albanese: Objection, your Honor.
"Q: Specifically from the Department of Social Services?
"the court: Approach the side bar.
"mr. albanese: Your Honor—
"(Side-bar discussion off the record)
"the court: The objection is sustained. Stay off of it. The people have civil matters all the time and strike it from your minds, members of jury. This has nothing to do with this case whatsoever.”
The exchange between defense counsel and the court, after the jury had been excused, revealed that defense counsel’s question referred to information contained in a confession of judgment plaintiff had "entered into with the Department of Social Services wherein she admitted that she received money improperly from the Department of Social Services and admitted and stated therein that she was promising to repay that money”. The court was emphatic in admonishing defense counsel to avoid the subject or risk contempt of court. The trial continued.
After considering the matter overnight, the court had a change of opinion and decided that defense counsel’s question should be permitted. Over plaintiff’s objection the following ensued:
"Q: Mrs. Badr, did you at any time receive money from the Department of Social Services to which you were not entitled?
"mr. albanese: Objection, Your Honor.
"the court: No, I will take it now. Did you receive any money that you weren’t entitled to?
"the witness: No.”
After the witness’s negative reply, the court — again over objection — permitted defense counsel to show the witness the confession of judgment which had been marked as an exhibit and to base his continued questioning on this document. *633 Under questioning by the court and defense counsel, plaintiff identified the document as a confession of judgment, indicating that she had received $2,654.50 from the Department of Social Services and that it was her signature which appeared on it. She denied, however, that she had received any money to which she was not entitled. She insisted that the money received was rightfully hers.[1]
The cross-examination ended as follows:
"Q: Did you agree to pay back money that you weren’t supposed to get?
"A: I agreed to pay back the money, yes.
"mr. schoene: Thank you. Nothing else. I will just offer [the confession of judgment] in evidence at this time. It does have a certification.”
The court received the confession of judgment as a defendant’s exhibit.
On his summation, defense counsel made repeated references to the confession of judgment including: "Now, I don’t bring this up to be judgmental in her having been on welfare; make no mistake about that. I bring it up only because this is extremely important in telling you, in aiding you, in assisting you in determining a witness’ credibility, in assisting you in determining whether Mrs. Badr was telling you the truth.” [and] "Now, I ask you, if Mrs. Badr is going to lie to the Department of Social Services in order to obtain $2,653 for herself, what do you think she would do for one million dollars? Do you think she’d do anything differently? Do you think that she wouldn’t lie to you when she lied for $2,653?” (emphasis added), [and] "even his honor made a mistake when he initially did not permit me to ask questions concerning the confession of judgment. He wouldn’t do it at first and then later on he changed his mind. He said I did have every good faith to ask that question. So he made a mistake.”
After the charge, the jury retired to commence deliberations at 3:40 p.m. At 4:06 p.m. the court received a note from the *634 jury indicating that it had reached a verdict. In answer to the question which the court had submitted: "Was there a defective and cracked window on property of the defendant, Mark Hogan? Yes or No?”, five of the six jurors agreed with the answer "No”.
The Appellate Division held that the general rule precluding the use of extrinsic documentary evidence to contradict a witness on collateral matters did not apply. The majority of the court reasoned that "the cross-examiner may, subject to the trial court’s discretion, continue to question a witness in an effort to induce the witness to change his answer [citations omitted]”, and that "defendant’s counsel, in pursuing the line of questioning after plaintiff’s denial, did exactly what he was authorized to do under existing precedent and, thus, the trial court properly exercised its discretion in permitting such inquiry.” (153 AD2d 826, 827-828.) We now reverse.
II
It is, of course, the general rule that a witness may be cross-examined with respect to specific immoral, vicious or criminal acts which have a bearing on the witness’s credibility (see, People v Schwartzman, 24 NY2d 241, 244, supra). While the nature and extent of such cross-examination is discretionary with the trial court (see, Richardson, Evidence § 500 [Prince 10th ed]), the inquiry must have some tendency to show moral turpitude to be relevant on the credibility issue (see, Langley v Wadsworth, 99 NY 61, 63-64; People v Montlake, 184 App Div 578, 583; Richardson, Evidence § 499 [Prince 10th ed]; Fisch, New York Evidence § 455 [2d ed]).
In her brief to this court, plaintiff argues that her alleged receipt of funds "to which [she was not] entitled” did not, without more, suggest moral turpitude and that, therefore, the court should not have permitted any inquiry on this subject. It is not clear whether plaintiff voiced this specific objection to defense counsel’s line of inquiry after the court reversed its earlier ruling and decided to permit the initial question. Moreover, both the majority writing and the dissent at the Appellate Division appear to be based on the assumption that the questioning concerning plaintiff’s receipt of the funds was proper as bearing on her credibility. Neither writing addresses the issue plaintiff now raises and its resolution is unnecessary to our decision.
Whether or not plaintiff’s receipt of funds from the Social *635 Services Department was a proper subject for cross-examination, the matter was unquestionably collateral. It was neither relevant to some issue in the case other than credibility nor was proof of it independently admissible to impeach a witness (see, People v Schwartzman, 24 NY2d 241, 245, supra; 3A Wigmore, Evidence § 1003 [Chadbourn rev 1970]). Unlike material facts in dispute, or matters such as a witness’s bias, hostility, or impaired ability to perceive which may be proved independently for impeachment (see, Richardson, Evidence §§ 491, 503, 507 [Prince 10th ed]), plaintiffs alleged prior misconduct had no direct bearing on any issue in the case other than credibility. If proven, it would show only that plaintiff had acted deceitfully on a prior unrelated occasion. The matter was, therefore, collateral and, under the settled rule, could not be pursued by the cross-examiner with extrinsic evidence to refute plaintiffs denial (see, People v Pavao, 59 NY2d 282, 288; People v Schwartzman, supra, at 245).
Defendant argues, nevertheless, and the Appellate Division held, that defense counsel’s continued cross-examination was permissible under the rule that although "a witness’ testimony regarding collateral matters may not be refuted by the calling of other witnesses or by the production of extrinsic evidence [citations omitted], there is no prohibition against examining the witness [herself] further on the chance that [she] may change [her] testimony” (People v Sorge, 301 NY 198, 201 [emphasis added]; see, Richardson, Evidence § 491 [Prince 10th ed]). Certainly, as we pointed out in Sorge, a negative response should not preclude "further interrogation of the witness [herself], for, if it did, the witness would have it within [her] power to render futile most cross-examination.” (Id., at 200-201 [emphasis added].) But further examination of the witness is not what happened here.
When faced with plaintiffs denial that she had ever received welfare money to which she was not entitled, defense counsel did not simply continue with further questions in an effort to elicit a different response. Rather, he immediately produced extrinsic evidence of the fact she had just denied— the confession of judgment which was already marked as an exhibit for identification.[2] In his very next question, defense *636 counsel directed the witness’s attention to this exhibit. She identified it and admitted signing it. After some questions by the court and defense counsel as to the circumstances leading to her agreement to sign the document, it was received in evidence as a defendant’s exhibit. The record shows that defense counsel produced the confession of judgment, asked questions pertaining to it, and ultimately succeeded in having it received as an exhibit for the purpose of adducing direct evidence of what the document purported to prove — a fact flatly contradicting plaintiff’s denial on cross-examination that she improperly received funds from the Department of Social Services.
The decisions in People v Sorge (supra) and People v Summers (49 AD2d 611), cited by defendant, are distinguishable and illustrate the very sort of further interrogation which a court may, in its discretion, permit after a witness’s denial of a collateral fact on cross-examination. In those cases, the cross-examiners, on the chance that the witnesses might retract their initial denials, sought to press the questioning about the denied fact by asking questions of those witnesses based on contradictory information they possessed. Here, however, as the dissenters at the Appellate Division aptly explained (153 AD2d, at 829), defense counsel "did not simply continue to question the witness” after she denied ever receiving money to which she was not entitled. Instead, counsel proceeded to have the confession of judgment marked and introduced as evidence for the purpose of proving that she had in fact done so. It was error to admit this extrinsic proof for the sole purpose of contradicting her testimony on that collateral issue (see, People v Schwartzman, supra, at 245; People v Sorge, supra, at 201).
There is no basis for defendant’s argument that the confession of judgment was properly used for the purpose of refreshing plaintiff’s recollection. Nothing in the record suggests that plaintiff’s recollection of the confession of judgment or the facts surrounding that transaction was unclear or that it was in need of being refreshed (see, Richardson, Evidence § 466, at 457 [Prince 10th ed]).
In view of the emphasis given to the confession of judgment *637 as bearing on the critical issue of plaintiffs credibility, both during the trial and in defense counsel’s summation, we reject the argument that the error was not sufficiently prejudicial to warrant a new trial (see, Barbagallo v Americana Corp., 25 NY2d 655, 656; Judson v Fielding, 227 App Div 430, 433, affd 253 NY 596). We do not address the other grounds for reversal urged by plaintiff.
The order of the Appellate Division should, accordingly, be reversed, with costs, and a new trial granted.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order reversed, etc.

. The Department of Social Services apparently claimed that it had improperly paid money to plaintiff on the assumption that she was legally separated from her husband when, in fact, she was not. Plaintiff testified that she believed she was entitled to the receipt of the money, however, because she was actually separated and was supporting herself and her children. She told the Department that she and her husband were separated but that she did not file legally for separation "because it would have stopped his papers for permanent residence in this country”.

. In the sworn confession of judgment in which Lydia Badr is defendant and the Rockland County Department of Social Services is the plaintiff, Lydia Badr (plaintiff here) confessed judgment for a debt justly due arising from the following facts: "[t]he defendant [Lydia Badr] received the said sum *636 from the plaintiff when defendant was not entitled to same under the provisions of the Social Services Law of the State of New York, and does hereby agree to make restitution to the Rockland County Department of Social Services in the amount of $2,653.50”.