■ MARK W. CAMPBELL, Respondent, v CITY OF ELMIRA, Appellant. [604 NYS2d 609] —Mercure, J. Appeal from a judgment of the Supreme Court (Ellison, J.), entered October 26, 1992 in Chemung County, upon a verdict rendered in favor of plaintiff.

On August 4, 1986, plaintiff sustained personal injuries after a motorcycle he was operating struck defendant's fire truck at the intersection of Clemens Center Parkway and East Second Street in the City of Elmira, Chemung County. Plaintiff was proceeding south on Clemens Center Parkway. Defendant's yellow pumper truck, responding to a general alarm at the County Jail, was being driven east on East Second Street and traveling 10 to 15 miles per hour as it entered the intersection against the traffic light. Plaintiff commenced this personal injury action which eventually went to trial and, following the close of proof, the jury found that defendant recklessly disregarded the safety of others in the operation of its fire truck, proximately causing plaintiff's injuries. The jury assessed no comparative fault against plaintiff and awarded him damages in the amount of $500,000.09. Defendant now appeals.

On this appeal, defendant principally contends that the verdict, particularly the jury's findings that defendant recklessly disregarded plaintiff's safety and that plaintiff was not comparatively at fault, was against the weight of the credible evidence. The privilege accorded drivers of authorized emergency vehicles under Vehicle and Traffic Law § 1104 does not relieve them "from the duty to drive with due regard for the safety of all persons, nor * * * protect [them] from the consequences of [their] reckless disregard for the safety of others" (Vehicle and Traffic Law § 1104 [e]; *see, Dugan v Longo,* 169 AD2d 872, 873-874; *Strobel v State of New York,* 36 AD2d 485, 488, *affd* 30 NY2d 629; *Stanton v State of New York,* 29 AD2d

612, 613, *affd* 26 NY2d 990). Whether a driver of an emergency vehicle recklessly disregards the safety of others generally presents a question of fact *(see, e.g., Dugan v Longo, supra,* at 874; *Kerwin v County of Broome,* 134 AD2d 812, 813-814, *lv denied* 71 NY2d 802; *Mitchell v State of New York,* 108 AD2d 1033, 1035, *lv denied, appeal dismissed* 64 NY2d 1128). We also note that drivers of nonemergency vehicles have a duty to yield the right-of-way to emergency vehicles *(see,* Vehicle and Traffic Law § 1144 [a]) and whether a plaintiff is comparatively negligent almost always presents a question of fact *(see, Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 516-517; *Delemos v White,* 173 AD2d 353, 354).

It has often been stated that a jury verdict must be accorded great deference *(Nicastro v Park,* 113 AD2d 129, 134). The power to set aside a verdict does not involve a question of law, but rather requires a discretionary balancing of many factors *(Cohen v Hallmark Cards,* 45 NY2d 493, 498-499). To set a verdict aside, "[i]t is necessary to first conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial" *(supra,* at 499). The test is not whether the jury erred in weighing the evidence presented, but whether any viable evidence exists to support the verdict *(Kozlowski v City of Amsterdam,* 111 AD2d 476, 477). Thus, we must review the evidence in the light most favorable to plaintiff, the party prevailing at trial *(see, Robillard v Robbins,* 168 AD2d 803, 805, *affd* 78 NY2d 1105).

Here, the driver of the fire truck, Nicholas Rich, stated that it was his obligation to know the color of the traffic light as he entered the intersection so as to determine the level of care required. Even so, Rich testified that he stopped looking at the light approximately 150 to 200 feet before entering the intersection and that he did not know the color of the light as the truck entered the intersection. Other firefighters testified that the fire truck proceeded against the traffic light. Although Rich testified that he looked in all directions prior to entering the intersection and that all the vehicles he observed were stopped, he testified before trial that the first time he looked in plaintiff's lane was when the fire truck was in the middle of the intersection. Plaintiff testified that the traffic light was green when he entered the intersection, that he was traveling approximately 25 miles per hour in a 30 mile-per-hour speed zone and that he had no time to stop when he observed the fire truck in the intersection.

The evidence thus viewed, we cannot say that the jury's verdict is utterly irrational. Rich was authorized to proceed through the steady red light "but only after slowing down as may be necessary for safe operation" (Vehicle and Traffic Law § 1104 [b] [2]). Inconsistencies in Rich's testimony and the evidence offered by other witnesses, which raised questions as to whether defendant recklessly disregarded the safety of others (see, Vehicle and Traffic Law § 1104 [e]) or whether plaintiff was guilty of culpable conduct (see, Russell v Hepburn Hosp., 173 AD2d 985, 987), presented issues of credibility that the jury obviously resolved in plaintiff's favor (see, Lachanski v Craig, 141 AD2d 995, 997). Further, contrary to defendant's contention, Rich's inconsistent prior sworn testimony could be considered by the jury as evidence-in-chief (see, Letendre v Hartford Acc. & Indem. Co., 21 NY2d 518; Whitman Delicatessen v State Liq. Auth., 83 AD2d 963, 964; Richardson, Evidence § 501, at 487-488 [Prince 10th ed]). Based upon our review of the record, we see no reason to disturb the jury's findings in regard to liability. In our view, the dissent's contrary conclusion amounts to nothing less than the unjustified legal determination that the operator of an emergency vehicle is entitled to pass through a steady red signal without exercising even the minimal degree of care of looking to see whether there is any intersecting traffic.

We also reject defendant's argument that the jury's award of damages was excessive. As a result of the accident, plaintiff sustained a compound fracture of the forearm, including a fracture at the elbow level which resulted in permanent loss of motion and some degenerative arthritic changes. Plaintiff underwent four surgical procedures concerning his wrist and experiences daily discomfort in the forearm, elbow and wrist areas. Plaintiff, 25 years old at the time of his accident, testified that he had his own engine repair business and therefore relied on his hands for his livelihood. Plaintiff added that his troubled arm inhibits his activities in general and his business in particular. This testimony was supported by several experts, including plaintiff's treating orthopedic surgeon and hand therapist, as well as an economist. Given these circumstances, we cannot conclude that the damages award, including $249,000 for economic loss and $228,381 for pain and suffering, deviates materially from what would be reasonable compensation (see, CPLR 5501 [c]). Nonetheless, and the jury foreman's explanation notwithstanding, the separate $55,000 awards for "loss of earnings" and "impairment of earning ability" up to the date of the jury's verdict were

duplicative as a matter of law. The verdict must be reduced accordingly.

Yesawich Jr., J. P., and White, J., concur.

Casey, J. (dissenting). We respectfully dissent. There is no evidence in this record from which the jury could reasonably conclude that defendant's fire truck was operated with reckless disregard for the safety of others, which is the appropriate standard of care in the circumstances *(see,* Vehicle and Traffic Law § 1104 [e]; *Dugan v Longo,* 169 AD2d 872). The undisputed evidence in the record establishes that the fire truck was traveling at no more than 20 miles per hour as it approached the intersection, with its lights, siren and air horn activated, and the fire truck slowed to less than 15 miles per hour as it entered the intersection. There can be no doubt that the fire truck had the right-of-way regardless of whether the traffic light was red or green in its direction *(see,* Vehicle and Traffic Law § 1104), and all other vehicles approaching the intersection, including plaintiff's motorcycle, were required to yield the right-of-way to the fire truck and come to a complete stop clear of the intersection *(see,* Vehicle and Traffic Law § 1144 [a]).

It is obvious that plaintiff failed to comply with the obligations imposed upon him by statute. His motorcycle was coasting at 25 to 30 miles per hour in the southbound passing lane as it approached the intersection, facing a red light. When he was between 200 and 300 feet from the intersection, the light turned green and he accelerated his motorcycle, passing two vehicles which remained stopped in the southbound driving lane. Plaintiff also saw that vehicles in the northbound lanes remained stopped at the intersection. Nevertheless, he proceeded into the intersection at 25 to 30 miles per hour and struck the fire truck on its side, near the rear wheel well.

The driver of the fire truck was not confronted with an actual and apparent danger in his path which he could have avoided. Nor was he traveling at high speed and without warning. The fire truck was operated in accordance with traffic regulations and the statutory requirements. It did not strike anything. It proceeded into the intersection slowly with the right-of-way and was struck by a vehicle which failed to yield the right-of-way. In these circumstances, the fire truck was the favored vehicle *(see, Kirk v Magee,* 1 AD2d 452, 454-455) and defendant cannot be held liable for its driver's failure to anticipate that although other traffic had stopped at the intersection, plaintiff would fail to comply with his statutory obligation to stop his vehicle clear of the intersection *(see,*

*Garrett v City of Schenectady,* 268 NY 219, 223; *Kirk v Magee, supra,* at 455-456). The fire truck driver's failure to observe the motorcycle as it approached the intersection was, at most, the result of ordinary negligence, which is not the standard of care applicable in these circumstances *(see, Dugan v Longo, supra,* at 874). The applicable standard of care is reckless disregard for the safety of others *(supra)* and there is no evidence in the record that defendant's driver was recklessly indifferent to the consequences of his actions. The judgment should be reversed and the complaint dismissed *(see, Garrett v City of Schenectady, supra).*

Although the foregoing conclusion makes any discussion concerning comparative fault academic, we disagree with the majority's conclusion regarding the jury's finding on that issue. The undisputed evidence in the record establishes that plaintiff failed to yield the right-of-way to the fire truck and, therefore, violated Vehicle and Traffic Law § 1144 (a), which constituted some evidence of negligence *(see, Ferrer v Harris,* 55 NY2d 285, 293). Plaintiff proceeded into the intersection at about the speed limit despite having observed that all other traffic at the light remained stopped when the light turned green. He also failed to see or hear the fire truck approach the intersection, even though the fire truck had its lights, siren and air horn activated and was not traveling at high speed. Based upon the undisputed evidence in the record, no jury could rationally conclude that plaintiff was not negligent or that his negligence was not a substantial factor in the happening of the accident. Had plaintiff seen and heard what was there to be seen and heard, as other drivers at the intersection did, and had he complied with the requirements of Vehicle and Traffic Law § 1144 (a), as other drivers at the intersection did, the accident never would have happened.

Crew III, J., concurs. Ordered that the judgment is modified, on the law, without costs, by reducing the damage award by $55,000, and, as so modified, affirmed.