■ WILBUR MCNEILL et al., Respondents, v LASALLE PARTNERS, Defendant, G.C.T. VENTURE, INC., et al., Appellants, and ETS CONTRACTING, INC., Respondent. (And a Third-Party Action.) LASALLE PARTNERS INCORPORATED, Second Third-Party

Plaintiff, and G.C.T. Venture, Inc., et al., Second Third-Party Plaintiffs-Appellants, v Miller Druck Co. Inc. et al., Second Third-Party Defendants-Respondents. LaSalle Partners Incorporated, Third Third-Party Plaintiff, and G.C.T. Venture, Inc., et al., Third Third-Party Plaintiffs-Appellants,v ETS Contracting, Inc., Third Third-Party Defendant-Respondent. [861 NYS2d 15]—

Judgment, Supreme Court, New York County (Wilma Guzman, J.), entered March 1, 2007, awarding plaintiff Wilbur McNeill, on a jury verdict, damages against defendants-appellants G.C.T. Venture, Inc. (GCT) and Lehrer McGovern & Bovis, Inc. and Bovis Lend Lease LMB, Inc. (formerly known as Lehrer McGovern & Bovis, Inc.) (collectively, Bovis), and dismissing defendants-appellants' third third-party complaint against third third-party defendant ETS Contracting, Inc. (ETS), the appeal from which brings up for review an order, same court (Kenneth L. Thompson, Jr., J.), entered October 13, 2005, granting second third-party defendants Miller Druck Co. Inc. and Miller Druck Specialty Contracting, Inc. (collectively, Miller Druck) and D. Magnan & Co., Inc. (Magnan) summary judgment dismissing defendants-appellants' second third-party complaint, unanimously reversed, on the law, without costs, the second and third third-party complaints reinstated, and the matter remanded for a new trial on all issues.

Plaintiff, an asbestos abatement inspector, alleges that he injured his knee when he slipped and fell on a liquid substance on the floor while he was walking to an abatement area to perform an inspection in the course of the renovation of Grand Central Terminal. The project was owned by defendant-appellant GCT, and defendant-appellant Bovis was the construction manager. After trial, the jury returned a verdict finding Bovis and GCT (collectively, appellants) liable for plaintiff's injuries under Labor Law § 241 (6). For the reasons discussed below, we reverse the judgment, reinstate appellants' second third-party complaint against Miller Druck and Magnan and appellants' third third-party complaint against ETS (both of which were dismissed before the case went to the jury), and remand for a new trial on all issues.

Initially, we reject appellants' argument that plaintiff was not within the class of persons entitled to assert claims based on violations of Labor Law § 241 (6). Plaintiff's inspection of asbestos abatement work during the construction phase of the Grand Central Terminal renovation project was essential and integral to the progress of the construction, since the abatement work could not continue unless he gave his approval. Plaintiff was thus within the class of persons that Labor Law § 241 (6) was intended to protect (*see Aubrecht v Acme Elec. Corp.*, 262 AD2d 994 [1999]).

At trial, the main thrust of appellants' defense on the issue of liability was to question the credibility of plaintiff's uncorroborated account of his accident. Appellants also questioned the credibility of plaintiff's testimony about the severity of his injury and its causation. Nonetheless, the court refused to permit appellants to impeach plaintiff's credibility by questioning him, on cross-examination, as to the reason he lost the job he held at the time of the accident. Although plaintiff testified at his deposition that he was laid off for economic reasons, the record reflects that appellants obtained documentation indicating that plaintiff was terminated for having defrauded his employer through the submission of fraudulent reimbursement slips. Such dishonest conduct (assuming plaintiff engaged in it) plainly falls within the category of prior immoral, vicious or criminal acts having a direct bearing on the witness's credibility, inasmuch as "it demonstrates an untruthful bent or significantly reveals a willingness or disposition . . . voluntarily to place the advancement of his individual self-interest ahead of principle or of the interests of society" (*People v Walker*, 83 NY2d 455, 461 [1994] [citations, internal quotations marks and brackets omitted]). Moreover, appellants sought to question plaintiff about this

matter in good faith, and with a reasonable basis in fact (*see People v Kass*, 25 NY2d 123, 125-126 [1969]). While the reason for plaintiff's termination, as a collateral matter (since plaintiff did not seek lost-earnings damages), was not a proper subject for extrinsic proof (*see Badr v Hogan*, 75 NY2d 629, 634-635 [1990]), under the circumstances of this case, the trial court abused its discretion as a matter of law in preventing appellants from questioning plaintiff about it during cross-examination. Since the issue of plaintiff's credibility went to the heart of appellants' defense as to both liability and damages, the error was not harmless, and a new trial is required.

The trial court also erred in precluding appellants from questioning plaintiff on cross-examination about his deposition testimony that the liquid on which he slipped might have been "encapsulate" (a milky liquid used in the abatement of asbestos) and in dismissing the third-party complaint against ETS, the project's asbestos abatement subcontractor, on that basis. At his deposition, plaintiff testified that he thought the liquid on which he slipped "could be some kind of encapsulate, but I wasn't sure." At trial, however, plaintiff testified that he had no idea what kind of liquid had caused his accident. Under these circumstances, appellants were entitled to question plaintiff about the deposition testimony in question, both for purposes of impeachment and to use the prior inconsistent testimony as evidence-in-chief that the liquid was encapsulate. In the latter regard, plaintiff's deposition testimony, which was given under oath by a declarant available for cross-examination at trial, has sufficient indicia of reliability to be considered as evidence-in-chief (*see Letendre v Hartford Acc. & Indem. Co.*, 21 NY2d 518 [1968]; *Campbell v City of Elmira*, 198 AD2d 736, 738 [1993], *affd* 84 NY2d 505 [1994]; *cf. Nucci v Proper*, 95 NY2d 597, 602 [2001] [witness's prior inconsistent "unsworn oral statements" were not admissible as evidence-in-chief], *affg* 270 AD2d 816, 817 [2000] [distinguishing *Campbell* on the ground that the prior inconsistent statement therein "was sworn testimony and was admissible as evidence-in-chief"]). Given that plaintiff is subject to cross-examination at trial, the admissibility of his prior deposition testimony is not affected by the circumstance that ETS did not receive notice of the deposition by reason of its own failure (although served with process) to appear in the action as of that time.

The appeal from the judgment brings up for review a pretrial order rendering summary judgment dismissing appellants' third-party complaint against Miller Druck (the project's marble, stone and tile contractor) and Magnan (to which Miller

Druck subcontracted the terrazzo floor work). This grant of summary judgment was erroneous. It appears from the record that the work of Miller Druck and Magnan produced a liquid "slurry" that could end up on the floor. As plaintiff's deposition did not conclusively establish that he slipped on encapsulate, rather than the slurry by-product of Miller Druck's and Magnan's work, an issue of fact exists as to which contractor was responsible for the liquid on which plaintiff slipped. Contrary to the arguments of Miller Druck and Magnan, the record contains evidence tending to show that these contractors were working in reasonable proximity to the site of plaintiff's accident. Accordingly, the pretrial motion and cross motion by Miller Druck and Magnan for summary judgment dismissing appellants' third-party complaint against them should have been denied.

Finally, the trial court erred in precluding appellants' expert witness, Dr. Lubliner, from testifying that the subject incident, which occurred in September 1997, was not a proximate cause of a lateral meniscus injury that first came to light in January 2004. Although Dr. Lubliner's CPLR 3101 (d) (1) disclosure statement, served three years before trial, did not state that he would opine as to the proximate causation of this particular injury, the reason for this omission was that plaintiff never gave any notice prior to trial that his expert, Dr. Goldstein, would connect the lateral meniscus injury (discovered in 2004) to the subject incident (which occurred in 1997). Appellants first learned that the lateral meniscus injury would be attributed to the subject incident when Dr. Goldstein testified at trial. Under these circumstances, plaintiff could not claim to have been misled or prejudiced by appellants' expert disclosure, and fairness demanded that appellants be permitted to present expert testimony to counter plaintiff's surprise contention that the subject incident caused the late-appearing lateral meniscus injury. We note that appellants' supplemental expert disclosure, served a month before trial, advised plaintiff that Dr. Lubliner's testimony would be based on his review of the medical records and of other testimony offered at trial. Accordingly, at the trial to be held on remand, in the event plaintiff presents evidence attributing the lateral meniscus injury to the subject incident, appellants should be permitted to present testimony on that issue by Dr. Lubliner or any other expert they may subsequently identify.

In view of the foregoing, we need not reach the parties' remaining arguments. Concur—Friedman, J.P., Williams, Catterson and Acosta, JJ.