# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

883

CA 13-01918

PRESENT: SCUDDER, P.J., PERADOTTO, CARNI, AND LINDLEY, JJ.

---

BONNIE YOUNG AND MICHAEL RONDINELLO,
PLAINTIFFS-RESPONDENTS,

V                                              MEMORANDUM AND ORDER

BARBARA LACY, DEFENDANT-APPELLANT.
(APPEAL NO. 2.)

---

BARTH SULLIVAN BEHR, BUFFALO (J. WILLIAM SAVAGE OF COUNSEL), FOR
DEFENDANT-APPELLANT.

GREENE & REID, PLLC, SYRACUSE (EUGENE W. LANE OF COUNSEL), FOR
PLAINTIFFS-RESPONDENTS.

---

Appeal from an amended order and judgment (one paper) of the
Supreme Court, Onondaga County (James P. Murphy, J.), entered July 16,
2013. The amended order and judgment, insofar as appealed from,
awarded money damages to plaintiff Bonnie Young.

It is hereby ORDERED that the amended order and judgment insofar
as appealed from is unanimously reversed on the law without costs and
a new trial is granted on the first cause of action.

Memorandum: Bonnie Young (plaintiff) and her husband commenced
this action seeking, inter alia, damages for injuries that plaintiff
sustained in a motor vehicle accident with defendant. The case
proceeded to trial, and the jury rendered a verdict in favor of
plaintiff and awarded her damages of $329,517, including $200,000 for
past pain and suffering and $127,387 for past lost earnings. We note
that no damages were awarded on the derivative cause of action, and no
cross appeal was taken. On appeal, defendant contends that Supreme
Court erred in refusing to allow her attorney to cross-examine
plaintiff with respect to information in her federal tax returns. We
agree with defendant, and we therefore reverse the amended order and
judgment insofar as appealed from and grant a new trial on plaintiff's
cause of action.

At trial, defendant's attorney sought to question plaintiff about
information in her federal tax returns that he believed to be
inaccurate. Specifically, he wanted to ask plaintiff why she had
filed as head of household for four consecutive years when she had
been married and living with her husband during that period. He also
sought to ask plaintiff how many of her children she had claimed as
dependency exemptions. According to defendant's attorney, plaintiff,

as a result of her improper filing as head of household, had received a tax credit to which she would not otherwise have been entitled. The court precluded defendant's attorney from asking plaintiff any questions about information in her federal tax returns, explaining that, because plaintiff had not been asked about such issues at her deposition, defendant's attorney was improperly attempting to "ambush" her at trial. Defendant's attorney objected to the court's ruling, thereby preserving the issue for our review.

"It is, of course, the general rule that a witness may be cross-examined with respect to specific immoral, vicious or criminal acts which have a bearing on the witness's credibility . . . While the nature and extent of such cross-examination is discretionary with the trial court . . . , the inquiry must have some tendency to show moral turpitude to be relevant on the credibility issue" (*Badr v Hogan*, 75 NY2d 629, 634). Furthermore, " 'cross-examination aimed at establishing a possible reason to fabricate must proceed upon some good-faith basis' " (*Matter of Michael U. [Marcus U.]*, 110 AD3d 821, 822).

Here, based on his reading of IRS Publication 51 and plaintiff's federal tax returns, defendant's attorney had a good faith basis to ask plaintiff about the propriety of her filing status. Moreover, if plaintiff had improperly filed federal tax returns as head of household in order to receive a tax credit to which she was not entitled, it raises the possibility that she may have committed tax fraud. We conclude that evidence that plaintiff may have committed tax fraud has "some tendency to show moral turpitude to be relevant on the credibility issue" (*Badr*, 75 NY2d at 634; *see generally Delgado v Murray*, 115 AD3d 417, 418). Although it is true, as plaintiff points out, that, because of the collateral evidence rule, defendant's attorney would have been bound by plaintiff's answers concerning her federal tax returns without "refuting [those] answers by calling other witnesses or by producing extrinsic evidence" (Prince, Richardson on Evidence § 6-305 [Farrell 11th ed]; *see also People v Schwartzman*, 24 NY2d 241, 245, *cert denied* 396 US 846; *Casa de Meadows Inc. [Cayman Is.] v Zaman*, 76 AD3d 917, 924), we nevertheless conclude that defendant's attorney should have been allowed to ask the questions (*see McNeill v LaSalle Partners*, 52 AD3d 407, 410).

Plaintiff's reliance on *Badr* (75 NY2d 629) is misplaced. In that case, the plaintiff in a personal injury action was asked on cross-examination whether she had committed welfare fraud. After plaintiff answered "[n]o" (*id*. at 632), the defendant's attorney marked as an exhibit a confession of judgment wherein plaintiff had admitted that she had improperly received money from the Department of Social Services and had agreed to pay it back. Over plaintiff's objection, the court allowed defendant's attorney to use the confession of judgment to impeach plaintiff's testimony that she had not committed welfare fraud. The Court of Appeals determined that it was reversible error for the trial court to have allowed the defendant's attorney to use *extrinsic evidence*, i.e., the confession of judgment, to impeach plaintiff's credibility (*id*. at 634-636).

The question presented in the case before us is not whether the court should have allowed defendant's attorney to impeach plaintiff's credibility with extrinsic evidence; rather, the question is whether the court should have allowed defendant's attorney to question plaintiff about information in plaintiff's federal tax returns that he believed to be inaccurate. Notably, the Court of Appeals in *Badr* did not suggest that it was error for the defendant's attorney to ask the plaintiff whether she had committed welfare fraud; the error occurred in allowing the defendant's attorney to use extrinsic evidence to show that the plaintiff's answer to the fraud question was false. Here, defendant's attorney was not permitted even to ask plaintiff his questions, and thus the facts of this case do not come within the holding of *Badr*. Finally, because plaintiff's credibility was central to several close issues at trial—including proximate cause, serious injury, and damages—it cannot be said that the error is harmless.

In light of our determination, we do not address defendant's remaining contentions.

Entered:  September 26, 2014                    Frances E. Cafarell
                                                Clerk of the Court