McGill v Whitney Museum of Am. Art (2024 NY Slip Op 51271(U))

[*1]

McGill v Whitney Museum of Am. Art

2024 NY Slip Op 51271(U)

Decided on September 13, 2024

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 13, 2024
Supreme Court, New York County

Richard McGill, Plaintiff,

against
Whitney Museum of American Art, TURNER CONSTRUCTION COMPANY, Defendant.

Index No. 158766/2015

Plaintiff: Sacks & Sacks by Monty Dale Doman, Esq., Kenneth Sacks, Esq., Scott Singer, Esq., Peter Thomas, Esq.
Defendants: Cozen O'Connor by Jessica Erickson, Esq., Eric Berger, Esq., Patrick Sardino, Esq., Mary Arnold, Esq., Seth Nirenberg, Esq.

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 015) 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 434, 435, 436, 437, 438, 441 were read on this motion to PRECLUDE
With the instant motion in limine, Plaintiff Richard McGill ("Plaintiff") moves this court for an order precluding Defendants Whitney Museum of American Art and Turner Construction Company ("Defendants") from cross-examining Plaintiff's treating orthopedic spinal surgeon, Andrew Merola, MD ("Dr. Merola"), his treating orthopedic surgeon, Steven Touliopoulos, MD ("Dr. Touliopoulos"), Thomas Kolb, MD ("Dr. Kolb"), and any medical professionals affiliated with Lenox Hill Radiology, concerning unproven allegations contained in a recently filed federal lawsuit. Plaintiff contends that the allegations in the federal lawsuit are collateral to the issues at hand in this Labor Law action and that their introduction at trial would serve no purpose other than to unfairly prejudice the jury. Plaintiff argues that the sole focus of this trial should be on the facts relevant to the claims at issue—namely, liability and damages—and not on extraneous and speculative accusations that have no direct bearing on the case. Defendants oppose the motion, seeking to introduce the federal lawsuit as evidence to challenge the credibility of these witnesses.
BACKGROUND
This litigation arises out of injuries allegedly sustained by Plaintiff on August 16, 2013, [*2]at the Whitney Museum of American Art. Plaintiff, employed as a glazier, claims he was injured when he attempted to step back into a scissor lift, lost his balance, and fell, striking steel with his right shoulder. As a result of this incident, Plaintiff has undergone significant medical treatment, including surgeries performed by Dr. Merola and Dr. Touliopoulos, to address injuries to his right shoulder and cervical spine.
In a separate, federal lawsuit filed on March 1, 2024, Roosevelt Road Re, LTD, and Tradesman Program Managers, LLC, alleged that Dr. Merola, Dr. Touliopoulos, Dr. Kolb, Lenox Hill Radiology, and other healthcare providers engaged in fraudulent billing practices. The claims in the federal lawsuit have not been fully adjudicated, and no court has determined the veracity of these allegations. Defendants in this case seek to introduce references to the federal lawsuit as a basis for impeaching the credibility of Plaintiff's treating physicians.
Plaintiff has moved to preclude any reference to the federal lawsuit, arguing that it is irrelevant to the issues in this Labor Law case and that its introduction would unfairly prejudice the jury by distracting them from the central issues of liability and damages.

DISCUSSION
Based on a thorough review of the parties' respective positions and papers, the court finds that the federal lawsuit is largely irrelevant to the issues being tried in this action and that the probative value of its introduction is outweighed by its prejudicial effect.
The Court of Appeals has held that collateral matters, particularly those concerning unproven allegations, are inadmissible when their sole purpose is to impeach the credibility of witnesses (see Badr v. Hogan, 75 NY2d 629 [1990]). Notwithstanding, Defendants argue that the federal lawsuit is relevant to the credibility of Plaintiff's treating physicians, particularly Dr. Merola, who they claim has engaged in fraudulent medical practices.
Contrary to Defendants' assertions, the mere fact that a lawsuit has been filed against Dr. Merola and others is not probative of the seminal issues in this Labor Law case, specifically the potential liability of Defendants and the extent of Plaintiff's injuries. In Badr, the Court of Appeals observed that it was improper to admit evidence of collateral matters relevant only to credibility because such evidence lacks probative value and poses a significant risk of prejudice (see Badr, 75 NY2d at 635). Similarly, in Mazella v. Beals, the Court of Appeals reversed a lower court's decision to admit evidence of a consent order from an unrelated disciplinary proceeding, finding that the evidence was collateral and improperly prejudicial (Mazella v. Beals, 27 NY3d 694, 711 [2016]). Although it is not controlling, this court also finds persuasive the reasoning in Rodriguez v. Cano, where the New Jersey Appellate Division reversed a trial court's decision to allow cross-examination of a physician based on unproven allegations in a separate lawsuit. The court emphasized that such evidence was improper and unduly prejudicial (Rodriguez v. Cano, 2023 N.J. Super. Unpub. LEXIS 1733).
Notably, the instant matter is not a medical malpractice case where the standard of care, as it applies to a treating physician, is at issue. Indeed, Plaintiff's treating physicians are not named defendants in this lawsuit. Rather, the focus of this trial is whether Defendants violated New York Labor Law and whether Plaintiff's injuries were caused by such violations. The federal lawsuit involving Dr. Merola and others has no relevance to the question of Defendants' potential liability and introducing it would only serve to unfairly bias the jury against Plaintiff.
Moreover, Plaintiff himself did not bill for the surgical procedures performed on him. Likewise, Plaintiff lacks even the most basic understanding of Dr. Merola's billing practices. [*3]Plaintiff was simply treated for injuries allegedly sustained when he attempted to step back onto a scissor lift, lost his balance, and fell. This is, at its core, the essence of this lawsuit—plain and simple.
Defendants' insinuation that Dr. Merola may have billed for a procedure he did not perform is nothing more than conjecture, supported only by the opinion of their expert. Defendants' reliance on Dr. Kim's affidavit is insufficient to justify cross-examining Dr. Merola about unproven allegations in an unrelated matter. Defendants argue that Dr. Kim's affidavit proves that Dr. Merola did not perform a partial vertebral corpectomy during Plaintiff's surgery. However, Plaintiff's reply affirmation highlights several issues with Dr. Kim's affidavit, which undermine its conclusiveness. Dr. Kim defines a partial corpectomy as the removal of at least 50% of the vertebral body and asserts that no significant change in the height of Plaintiff's C6 vertebral body was observed in post-operative imaging. However, as Plaintiff points out, Dr. Kim does not dispute that a portion of the vertebral body was removed. His affidavit focuses on whether 50% of the vertebral body was removed, rather than whether any part of the procedure was performed.
Moreover, Dr. Kim's affidavit acknowledges that even if less than 50% of the vertebral body was removed, this does not necessarily impact the outcome of the surgery. This concession is critical, as it weakens Defendants' argument that Dr. Merola's surgical performance is questionable. Plaintiff rightfully argues that the affidavit does not provide categorical proof that Dr. Merola failed to perform a partial corpectomy, only that Dr. Kim disagrees with the extent of the procedure. This is a matter of expert opinion, not objective fact, and should not be the basis for attacking Dr. Merola's credibility .
Dr. Kim's affidavit, at best, reflects a professional disagreement regarding the interpretation of imaging and the definition of a partial corpectomy. It does not constitute proof of fraud or medical malpractice. The affidavit does not claim that Dr. Merola misrepresented the surgery or billed for a procedure he did not perform. Therefore, introducing this affidavit in conjunction with unproven allegations from a federal lawsuit would only serve to confuse the jury and unfairly prejudice Plaintiff's case.
The situation is further complicated by the fact that Dr. Merola's treatment was already reviewed and approved within the workers' compensation system, where multiple medical professionals, including those hired by insurance carriers, had access to Plaintiff's medical records and films. The federal lawsuit, which ignores this context, is speculative and should not serve as the basis for questioning Dr. Merola about his care of Plaintiff.
As previously established, evidence of collateral matters must be excluded when its probative value is outweighed by the risk of unfair prejudice. Dr. Kim's affidavit offers no definitive proof of wrongdoing and is, at best, an opinion regarding the extent of a procedure. Allowing Defendants to cross-examine Dr. Merola about unproven allegations in the federal lawsuit would confuse the jury and shift focus away from the core issues of liability and damages. Furthermore, such cross-examination would violate the well-settled principle that collateral matters are inadmissible unless they directly relate to the issues at hand .
While Defendants may cross-examine Dr. Merola to determine whether he in fact performed the procedure for which he billed, reference to the federal lawsuit is irrelevant to the issue of liability and only marginally relevant to the issue of Dr. Merola's credibility solely as it relates to damages. Indeed, it could be argued that Dr. Merola's credibility bears on the issue of [*4]damages insofar as Defendants question whether Dr. Merola performed a partial corpectomy on Plaintiff.[FN1]
Notwithstanding, reference to the federal lawsuit does not make it any more or less likely that Dr. Merola performed the partial corpectomy on Plaintiff. Defendants argue that, even if the court deems references to the federal lawsuit itself impermissible, they should still be permitted to question Dr. Merola about the underlying allegations, claiming a good faith basis to challenge his credibility on that ground. However, these allegations remain unproven and have not been admitted to by Dr. Merola, nor have they been established as fact in the adjudication of the federal case. In the court's view, Defendants lack a good faith basis to question Dr. Merola about the allegations of improper billing related to the federal lawsuit, as they have failed to demonstrate how these allegations are significantly relevant to the present matter. Moreover, they cannot show that the probative value of such an inquiry would outweigh the potential prejudice to Plaintiff.
Even if the federal lawsuit were marginally relevant to the issue of credibility, the trial court decisions cited by Defendants, where questions about a physician's treatment of unrelated patients were allowed, occurred in entirely different contexts than the present case (see Cotgreave v. Public Administrator of Imperial County, 443 NYS2d 971 [Sup Ct Suffolk County 1981]; see also Lopes v. County of Suffolk, Index No. 605044/2018, Doc. No. 151 [Sup Ct Suffolk County June 10, 2024]). For instance, Cotgreave was a medical malpractice case wherein a party sought to question a named-defendant physician about similar acts on the part of that defendant physician in connection with patients beyond the named-plaintiff. That is simply not the case here. Furthermore, Cotgreave was a lower court decision and was effectively superseded by the Court of Appeals ruling in Matter of Brandon (55 NY2d 206 [1982]), which emphasized that evidence of collateral acts is inadmissible unless it is directly connected to the act in question and forms part of a common scheme or plan.
Likewise, Lopes involved a circumstance where questioning was permitted only during the damages phase of the lawsuit. Where, as here, the trial is not bifurcated and the issues of liability and damages will be contemporaneously litigated, the prejudice that would ensue by allowing reference to the federal lawsuit far exceeds any probative value. 
With respect to the other physicians, including Drs. Touliopoulos and Kolb, Defendants' assumption that these doctors may have billed for procedures they did not perform is entirely speculative and lacks any evidentiary support within the record of this proceeding. Defendants rely solely on the fact that these physicians were named in the federal lawsuit, without presenting any substantive proof connecting their alleged conduct to the matter at hand. Such reliance is insufficient, and indicative of the absence of any good faith basis. The mere mention of these physicians in an unrelated lawsuit does nothing to establish that lawsuit's relevance to this case. Therefore, any reference to the federal lawsuit concerning these physicians is unquestionably irrelevant to both liability and damages here. To introduce such evidence would distract from the real issues and potentially mislead the jury, undermining the fairness of the proceedings. Indeed, the filing of a lawsuit, in and of itself, proves nothing about the validity of [*5]the claims contained therein. As noted in Mercedes v. New Era Mechanical Corp., the mere fact that a complaint has been filed is not probative of any issue in the case, and it would be improper to allow the jury to infer guilt or wrongdoing based on the existence of an unrelated lawsuit (Mercedes v. New Era Mech. Corp., Index No. 67961/2019 [Sup. Ct., Westchester County, Mar. 11, 2024]).
The People v. Schwartzman (24 NY2d 241, 245 [1969]) decision also reinforces this principle by holding that evidence of unrelated bad acts, even if relevant to credibility, should be excluded if its probative value is outweighed by its potential for prejudice. Here, the probative value of the federal lawsuit is minimal at best, as it does not directly relate to the medical treatment provided to Plaintiff. Indeed, the federal lawsuit has no bearing on the issue of liability and only marginally relates to damages based on Defendants' speculative opinion that Dr. Merola may not have performed a procedure he claimed he performed — namely, the corpectomy. While Defendants are free to cross-examine the physician witnesses about the contents of their reports, the care that they provided, and their examinations prepared in conjunction with this case, Defendants are not be allowed to introduce references to unrelated and unproven allegations from the federal lawsuit. To be sure, the prejudicial effect from such references would be profound, as it could lead the jury to unfairly question the integrity of Plaintiff's medical treatment based on unsubstantiated and unrelated allegations.
In this court's assessment, introducing the federal lawsuit would create a significant risk of undue prejudice, as it could lead the jury to infer that because these physicians are accused of fraud in an unrelated case, they must be guilty of similar misconduct in this case. Such reasoning is precisely what the collateral evidence rule is designed to prevent, as it would unfairly bias the jury against Plaintiff's case based on unrelated, speculative allegations.
Defendants cite cases such as Castillo v. 62-25 30th Ave. Realty, LLC (74 AD3d 1116, 1117 [2d Dept 2010]) and Spanier v. New York City Transit Auth. (222 AD2d 219 [1st Dept 1995]) to support their argument that they should be allowed to introduce evidence of prior bad acts to impeach the credibility of Plaintiff's treating physicians. However, these cases are distinguishable. In both Castillo and Spanier, the courts allowed cross-examination about prior bad acts only when there was a direct and proven connection between those acts and the issues being tried in the case. For instance, in Castillo, the Appellate Division, Second Department, found that it was proper to question the plaintiff's treating orthopedist regarding the facts that led to the suspension of his license to practice medicine after a formal finding against the physician had been made. To be sure, the physician was not questioned regarding unproven, unsubstantiated allegations.
Likewise, in Spanier, the Appellate Division, First Department, allowed defense counsel to ask a plaintiff's treating physician about improper billing where a disciplinary matter was resolved three years prior to trial. As in Castillo, the physician was not questioned about unproven, unsubstantiated allegations.
In contrast, here, no such connection exists. The federal lawsuit is unrelated to the issues of liability and only marginally related to damages in this Labor Law action and has not resulted in any findings of fact that could be considered probative of the issues in this case. Moreover, the named Plaintiffs in the federal lawsuit are insurance companies alleging improper billing. Plaintiff is not a party to the federal lawsuit, and the allegations in connection with this lawsuit are not at issue in the federal lawsuit.
Defendants cite Jacobs v. Madison Plastic Surgery, P.C. (106 AD3d 530 [1st Dept [*6]2013]) to support their argument that cross-examining a physician about prior allegations is permissible. However, this reliance is misplaced. As noted in Plaintiff's reply affirmation, the court in Jacobs found that while the admission of evidence concerning prior medical malpractice actions against an expert was not reversible error, it was also deemed "harmless error." Moreover, the facts in Jacobs involved proven malpractice claims, not unsubstantiated allegations from a pending lawsuit, further distinguishing it from the present case .
The Court in People v. Zabrocky (26 NY2d 530 [1970]) clarified that it is improper to use unrelated bad acts as a basis for impeaching a witness' credibility unless those acts have been proven and have a direct bearing on the issues being litigated. The unproven allegations in the federal lawsuit do not meet this standard, and their introduction would only serve to confuse the jury and prejudice Plaintiff's case.
Defendants' reliance on the unproven allegations in the federal lawsuit as a basis for cross-examination is fundamentally flawed. As established in People v. Smith (27 NY3d 652, 664 [2016]), unsubstantiated accusations contained in unrelated lawsuits are not admissible for impeachment purposes because they have little to no probative value and pose a substantial risk of prejudice. This principle was further affirmed in Dance v. Town of Southampton (95 AD2d 442 [2d Dept 1983]), where the court held that it was improper to use arrests or indictments as a basis for impeachment because they merely involve accusations of guilt without any findings of fact.
Similarly, here the unproven allegations in the federal lawsuit against Dr. Merola and others fall squarely within this category. They have not been adjudicated, and no court has determined their validity. As such, they should not be used to impeach the credibility of Plaintiff's treating physicians in this case.
Defendants' attempt to introduce the federal lawsuit also runs afoul of the well-established rule against the use of collateral evidence to prove a witness' propensity to commit similar acts. In Matter of Brandon (55 NY2d 206, 210-211 [1982]), the Court of Appeals held that evidence of similar acts on unrelated occasions is inadmissible to prove that a person did a similar act on a particular occasion, unless it falls within one of the narrow exceptions recognized by law, such as proving motive, intent, or a common scheme or plan. None of these exceptions apply here, as the allegations in the federal lawsuit are not sufficiently connected to the issues of liability or damages in this case. Indeed, the introduction of such evidence would cause undue hardship to Plaintiff and risk turning this trial into a series of "trials within a trial" concerning medical treatment of other patients, as Plaintiff asserts. The jury might impermissibly assume that the facts underlying the federal lawsuit were the same as those in the present case, thus unfairly prejudicing Plaintiff. As noted in Matter of Brandon, a common scheme or plan cannot be inferred from mere similarity in allegations unless there is a clear connection between the acts in question, which is entirely lacking here.
Furthermore, the court in Kourtalis v. City of New York (191 AD2d 480 [2d Dept 1993]) underscored that the introduction of unproven civilian complaints against a police officer was reversible error because it violated the general rule against proving that a person did an act on a particular occasion by showing that he did a similar act on a different, unrelated occasion. The same reasoning applies here: the unproven allegations in the federal lawsuit cannot be used to suggest that Plaintiff's treating physicians engaged in misconduct in this case. As discussed, the allegations in the federal lawsuit do not pertain to Plaintiff's medical treatment in this case. Even if Defendants were allowed to cross-examine Dr. Merola about his treatment of other patients as [*7]alleged in the federal lawsuit, such questioning would serve only to prejudice the jury by suggesting a pattern of misconduct without any factual basis to support it.
Based on the foregoing, it is hereby
ORDERED that the court grants Plaintiff's motion to preclude Defendants from cross-examining Dr. Merola, Dr. Touliopoulos, Dr. Kolb, and any medical professionals affiliated with Lenox Hill Radiology concerning the unproven allegations in the federal lawsuit as the court finds that the prejudice associated with introducing reference to the federal lawsuit far outweighs its probative value; and it is further
ORDERED that the parties are directed to refrain from reference to the federal lawsuit during the trial; and it is further
ORDERED that Defendants may, however, cross-examine these witnesses about the contents of their reports, the care that they rendered, or examinations they prepared in conjunction with this case.
This constitutes the decision and order of the court.
DATE 9/13/2024
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:It is worth noting that the partial corpectomy is not the main component of Plaintiff's damages claim. Rather, the thrust of Plaintiff's damages stem from a spinal fusion and shoulder surgical procedures. Therefore, the partial corpectomy is a marginal component of the damages at issue in this lawsuit.